### Sabatino Baragiano v. Pasquale Villani.

### Gen. No. 11,646.

1. SERVICE OF NOTICE—*when, not established.* Where a lease provides for termination thereof upon service of a particular notice to "any person in possession," service upon a person found upon the premises other than the lessee is not such a service as is contemplated by the lease.

2. POSSESSION—*who not deemed in, for the purpose of maintaining forcible detainer.* Possession by a person who merely happens to be on the premises, as for instance, a mere lodger, is not such a possession as will authorize the maintenance of forcible detainer.

3. LEASE—*effect of lessee's failure to sign.* It is no more necessary for a lessee to sign a lease in order that the same may become a binding obligation than it is for the grantee of a conveyance in fee to sign the deed.

Forcible detainer proceeding. Appeal from the Superior Court of Cook County; the Hon. JESSE HOLDOM, Judge, presiding. Heard in this court at the March term, 1904. Reversed. Opinion filed December 15, 1904.

SIMEON ARMSTRONG, for appellant.

No appearance for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

This is an appeal from a judgment in forcible detainer by appellee against appellant. The suit was commenced by appellee May 29, 1903, before a justice of the peace, and June 5, 1903, judgment was rendered by the justice in favor

Baragiano v. Villani.

of appellee, and appellant appealed to the Superior Court. The cause was tried by the court, a jury being waived, and the court found for appellee and rendered judgment accordingly.

It appears from the evidence that May 1, 1901, Mary Meiselbar leased to appellant from that date until April 30, 1902, " the entire two-story and basement frame house, consisting of twelve rooms and known as No. 351 South Jefferson street, in the city of Chicago." Mary Meiselbar executed to appellant another lease of the same premises, of date May 1, 1902, for a term from that date till April 30, 1905. Endorsed on the latter lease is the following:

" CHICAGO, April 23, 1902.

In consideration of the premises, it is understood and agreed between the parties to the within lease, that the term of this lease may be terminated at the option of the first party, at any time hereafter, on giving thirty days' notice, in writing, to any person in possession of the same, in case of sale or descent.

MARY MEISELBAR,
SABATINO BARAGIANO."

May 29, 1903, Mary Meiselbar conveyed the demised premises, by warranty deed, to appellee. It is recited in the deed that it "is made in fulfillment of agreement between the parties hereto, dated April 28, 1903." The following was put in evidence:

" CHICAGO, April 23, 1903.

To SABATINO BARAGIANO:

You are hereby notified that I this day declare my option to cancel and terminate the lease now held by you, dated the 1st day of May, 1902, to the property therein described as follows, to-wit: The entire two-story and basement frame house, consisting of 12 rooms, and known as No. 351 South Jefferson street, in the city of Chicago, together with all the appurtenances thereunto belonging, in the City of Chicago, Cook County, and State of Illinois, in thirty days.

This option is declared under and by virtue of the agreement endorsed on the aforesaid lease, and its provisions therefor.        MARY MEISELBAR,
By B. H. MELANG,
Attorney."

Annexed to this notice is an affidavit of B. H. Melang that he served the notice on Sabatino Baragiano, by delivering to and leaving with *her* the notice. Appellee, relying on the endorsed agreement and the foregoing notice, brought suit against appellant for forcible detainer. The question is, whether appellee can maintain the action.

Appellant testified that he cannot read or write, and that he knew nothing of the agreement endorsed on the lease providing for a termination of the tenancy. Mrs. Baragiano testified that she signed appellant's name to the endorsed agreement, and that appellant, her husband, did not, at any time, know that she so signed his name; that he was absent at work when she signed it. Melang, appellee's witness, testified that he and Mrs. Meiselbar went to the demised premises together, and that he saw Mrs. Baragiano sign the endorsed agreement, and that appellant was not then on the premises. The foregoing evidence is uncontradicted, and the circumstances are corroborative of it. The second lease runs from May 1, 1902, to April 30, 1903. The term had not commenced April 23, 1902, when the endorsed agreement is dated, and when appellee's own witness, Melang, testified it was made, and it seems inconsistent, at least, to suppose that appellant would, before his term commenced, make an agreement by which appellee might, on the first day of the term, give him a notice terminating the term in thirty days. But no sufficient notice was given of the termination of the term. It seems hardly necessary to say that Melang's affidavit was no evidence of service of the notice.

Melang, called as a witness by appellee, testified that he served the notice on a lady on the premises, who said she was Mrs. Baragiano; that he supposed she was Sabatino Baragiano. In other words, that he supposed that a woman, with a woman's name, was a man. He also testified that he knew the defendant, Sabatino Baragiano, and that he did not serve the notice on him. Appellant also testified that the notice was not served on him, and his wife testified it was not served on her. It appears from

the testimony of appellee that appellant's mother was living on the premises, and the notice may have been served on her.

The endorsed agreement provides for "notice in writing, to any person in possession of same, in case of sale or descent." The evidence shows that appellant was in possession, and appellee, by bringing the action against appellant, impliedly admits that he was in possession. If the fact is that he was not, then the action was wrongly brought, because it must be brought against the party in possession. The word "possession" does not include a person or persons who merely happen to be on the premises at the time of service of the notice, as, for instance, a lodger or one temporarily there. "Possession. The detention or enjoyment of a thing which a man holds or exercises by himself, or by another who keeps or exercises it in his name." Bouvier's Law Dictionary. "Possession means simply the owning or having a thing in one's power. It may be actual, or it may be constructive." Brown v. Volkenberg, 64 N. Y. 80. "It implies a present right to deal with the property at pleasure and to exclude other persons from meddling with it." Sullivan v. Sullivan, 66 N. Y. 37, 41. "Possession is one degree of title, although the lowest. It is such an interest in land that one who has only the bare possession may maintain ejectment against a mere wrongdoer, who has intruded into the possession." Swift v. Agnes, 33 Wis. 228, 240. It was intimated by the court on the trial that the lease being under seal, Mrs. Baragiano could not legally sign her husband's name to it, unless authorized thereto by an instrument of equal dignity; also that the lease might be regarded as her lease taken in her husband's name, and, indeed, the case seems to have been decided on the latter hypothesis. It was not necessary to the validity of the lease, or to its being binding on appellant, that he should sign it. A lease for years takes effect from delivery and entry into possession of the demised premises by the lessee. Taylor on Landlord and Tenant, sec. 68. It is no more necessary for a lessee to

sign the lease, which is a mere conveyance of an estate carved out of the fee, than it is for the grantee in a conveyance in fee to sign the deed, in order to be bound by its terms.

The lease cannot be deemed a lease to Mrs. Baragiano. It runs, in terms, to Sabatino Baragiano, and he testified that the lease was to him. Moreover, he is the party sued, and complained against, as wrongfully withholding the possession.

The judgment will be reversed.

*Reversed.*