Marquette National Bank as Trustee Under Trust Number 1358, Charles Shulte and Stanley Ray, Plaintiffs-Appellees, v. Village of Oak Lawn, a Municipal Corporation, Defendant-Appellant.

Gen. No. 50,120.

First District, Third Division.

March 11, 1965.

■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■

Gerhardt J. Gliege, of Oak Lawn, for appellant.

McCarthy, Witry, Lyon & McCarthy, of Chicago, for appellees.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

The plaintiffs, after exhausting all administrative remedies, filed a complaint which sought a declaratory judgment that the zoning ordinance of the Village of Oak Lawn was invalid in its application to certain property held in trust by the plaintiff Marquette National Bank, under which trust the plaintiffs, Charles Shulte and Stanley Ray, are the owners of the beneficial interest. The trial court found in favor of the plaintiffs and the village appealed to the Supreme Court which in its order transferring the cause here adjudged that it had no jurisdiction on direct appeal.

The plaintiffs bought the subject property in 1959 for $54,000, with the intention of using it in their own business. In 1960 their plans changed and they tried unsuccessfully to sell the property until October 1962, when they received an offer of $80,000. They then entered into a contract (conditioned upon rezoning) to convey their property to a purchaser who plans to construct and operate a drive-in restaurant—a use not permitted by the zoning ordinance. The Oak Lawn Zoning Board of Appeals denied the plaintiffs' appli-

cation for rezoning and the Village Board of Trustees upheld the zoning board's decision.

The Village of Oak Lawn is bisected by two main thoroughfares: 95th street from east to west and Cicero Avenue from north to south. Both streets are almost entirely zoned B-1, a zoning classification which permits the use of the land for business purposes including retail stores and shops, restaurants (except drive-in restaurants), sales and show rooms, plumbing, locksmith, barber, shoe, tailor, upholstery and electric repair shops, bakeries and cleaning establishments employing no more than two employees, offices, banks, post-offices, fire and police stations, undertaking parlors, recreation buildings, studios and hotels. With some exceptions, the uses on both streets conform to the B-1 classification.

The subject property is located at 4660 West 95th street, a six-lane, heavily travelled highway 80 feet wide, divided by a median strip. It is a vacant lot on the north side of the street and is rectangular in shape with 166 feet fronting on 95th and with a depth of approximately 382 feet extending north to 94th street, a non-dedicated street. The front portion of the lot on 95th street to a depth of 150 feet is zoned B-1. The rear portion, with a depth of 182 feet, is zoned for residential use, but all the expert witnesses who testified in this case, including the defendants, said that the rear of the lot is not suitable for residential development.

Immediately to the west of the subject property there is a one-story frame house, 75 to 80 years old; next is a movie theater with a driveway extending along its east side from 95th to a parking lot north of 94th street; next is a discontinued drive-in ice cream stand and then there is a vacant lot on the corner of Cicero Avenue which had been occupied by

33

a gasoline service station. Around the corner on the east side of Cicero (which is 4800 west) there is a large restaurant which extends to 94th street, the right of way of the Wabash Railroad crosses Cicero to the southwest at this point and north of the right of way are two automobile agencies and, at 93rd street, a drive-in restaurant.

On the northwest corner of 95th and Cicero there is a 15-acre tract developed with retail stores, two banks, two automobile agencies, a post-office and a telephone exchange.

To the east of the subject property on the north side of 95th is a used car lot adjoining an auto sales and service agency; east of this is a landscaped lot on which there is a garbage disposal company with an attached garage; to the east of this company is an old frame house and then in order to Crawford Avenue (the village's eastern boundary) there are: a vacant lot, an office building with a barber shop and a restaurant, a real estate office, one-half block of vacant land, a drive-in restaurant, a hospital, a professional office building with a pharmacy and a restaurant, another auto agency with repair service and a used car lot, some vacant land, a 36-lane bowling alley with a restaurant and a parking lot, 300 feet of vacant land and still another automobile dealer and a used car lot.

On the south side of 95th street and west of Cicero there is a restaurant on the southwest corner and then several retail stores, various offices, another restaurant and the Wabash Railroad tracks which swing across 95th from the northeast.

On the south side of 95th street, proceeding eastward from Cicero, there is a drive-in restaurant on the southeast corner, then a 20-acre shopping center, which fronts on both 95th and Cicero and which has large parking lots, a vacant lot, a motel (which is across the street from the subject property), four-

apartment buildings, a restaurant and parking area which cover a whole block, an apartment building, a vacant lot one-half block in size and then apartment buildings and various business establishments including a restaurant, a miniature golf course and an amusement park for children.

Prior to 1955 drive-in restaurants were included in the B–1 classification but in that year the zoning ordinance was amended to exclude them and thereafter they were classified B–2. Other B–2 uses are gasoline stations, public garages, dyeing works, laundries, lumber yards, laboratories, outdoor amusement places, used merchandise and equipment shops and welding, machine repairing, printing, roofing, plastering, grinding, tinsmithing, tire repair and auto repair shops.

 Generally speaking, a landowner has the right to use his property in any lawful way he wishes. This right is subject to zoning regulations if they have a real and substantial relation to the common good and promote the public health, safety, morals or welfare. The party who assails a zoning ordinance has the burden of proving by clear and convincing evidence that it is invalid as applied to his property because a presumption of validity attaches to the ordinance. If there is a reasonable difference of opinion reviewing courts will not interfere with the discretion of the legislative body which enacted the ordinance. La Salle Nat. Bank of Chicago v. County of Cook, 12 Ill2d 40, 145 NE2d 65. The zoning classification surrounding the property and whether the zoning is uniform and established, the character of the plaintiffs' property and whether it is zoned in conformity with the surrounding uses, are matters of importance in determining the reasonableness of zoning regulations. Chicago Title & Trust Co. v. City of Harvey, 30 Ill2d 237, 195 NE2d 727; River Forest State Bank & Trust Co. v. Maywood, 23 Ill2d 560, 179 NE2d 671.

■ Although municipalities are enabled to impose restraints on the use of private property, the power cannot be arbitrarily exercised and if the public gain is small when compared with the hardship upon the property owner the restraint constitutes an unreasonable use of the municipality's police power and must be set aside as an unjustifiable restriction upon the ownership and free use of property. Tillitson v. City of Urbana, 29 Ill2d 22, 193 NE2d 1; Weitling v. County of DuPage, 26 Ill2d 196, 186 NE2d 291.

In Frost v. Village of Glen Ellyn, 30 Ill2d 241, 195 NE2d 616 (1964), the court had before it a zoning question much like the one we have here and held that the defendant's zoning ordinance was arbitrary and capricious insofar as it prevented a drive-in restaurant on the plaintiffs' property. The plaintiffs had bought two lots (one vacant and one improved) in 1948 and 1950 for the total price of $17,500. In 1961 they offered their property for sale for $42,500 but their efforts to sell were unsuccessful and they obtained a franchise from a drive-in restaurant chain with the intention of building and operating such a restaurant. The village's zoning ordinance permitted restaurants but not drive-in restaurants on the property. Other uses permitted under the classification which applied to the plaintiffs' property included, as in our case, "almost every conceivable business normally found in the downtown area of a community." The plaintiffs' property was on a northeast corner and next to it on the east was a restaurant and next to it on the north was a laundromat and then a gasoline station. On the northwest corner was a supermarket with parking space for 40 or 50 cars. To the north of the supermarket were retail establishments including a drive-in cleaning shop and a restaurant. On the southwest corner was an elementary school and on the southeast corner was land owned

by the elementary school district. On this land was a baseball field and a three-car garage used by the school district. The area to the east, south and west of the four corners was zoned and used for single-family residences. The area a block to the north was not within the village limits and was zoned for business purposes.

The court stated that it saw nothing essential in the protection of the public welfare which required the singling out of the drive-in restaurant business and according it a different treatment than the other uses permitted by the zoning regulations; this was particularly so, the court said, in view of the existing uses which characterized the vicinity of the plaintiffs' property. The court further said that a drive-in restaurant would attract no greater traffic, would have no greater deprecatory effect upon nearby residences and would be no more detrimental to the public health, safety, welfare or morals than would a restaurant fully enclosed within four walls, or a bakery, a candy or ice cream store, a meat market, a delicatessen, a retail liquor store or any of the many more businesses permitted under the existing classification. The court stated:

> "Statutory classifications, even those effected by zoning ordinances, can be sustained only where there are real differences between the classes and where the selection of a particular class, as distinguished from others, is reasonably related to the evils to be remedied by the statute or ordinance."

There is no essential difference between the Frost case and the one at hand. As in Frost, the exclusion of drive-in restaurants from the retail business uses permitted by the defendant's B–1 classification is without substantial relationship to the public welfare. As

applied to the plaintiffs' property the exclusion capriciously prohibits the use of that property for a purpose which would be in conformity with permitted B–1 uses.

The argument of the defendant that the B–1 character of the area is "unbroken and without threat of being broken" except by the plaintiffs, that the record demonstrates that the "uses in the area conform wholly with its zoned purpose" and that granting the plaintiffs' plea would be "spot zoning" ignores its own zoning map and flouts the record. There are three drive-in restaurants nearby the plaintiffs' property. One is two blocks to the east on 95th street; the second is diagonally to the southwest, approximately 400 feet away on the southeast corner of 95th and Cicero; the third is on Cicero at 93rd street. The defendant's brief repeatedly describes all three as legal nonconforming uses. The first one is but the second and third are not. The drive-in two blocks to the east was in business at the time the 1955 amendment was adopted and it is, therefore, a legal nonconforming use—a B–2 use on property zoned B–1. The drive-in on the southeast corner of 95th and Cicero was built in 1955 or 1956, but the record does not disclose when the drive-in on Cicero at 93rd commenced operating. But even if these two were in business before the amendment they are not now legal nonconforming uses as that term is understood in zoning law. In both instances the land upon which they stand is zoned B–2 and, therefore, they are B–2 uses on property zoned B–2. Thus, the uniform character of the zoning in the area has been broken by the defendant itself. No explanation was offered by the defendant at the hearing before the master in chancery to whom this case was referred as to why these and two or three other nearby properties were zoned B–2.

38

■ The B–2 zoning is of particular interest in regard to the drive-in restaurant on the southeast corner of 95th and Cicero. This B–2 zoning is an island amidst B–1 zoning; it is encompassed on the east and south by the shopping complex and to the west and north it faces the other three corners of the intersection, all zoned B–1. This property for some unrevealed reason has been accorded preferred treatment. In view of the prevailing zoning and the existing uses on both sides of 95th street, it is discriminatory to permit by ordinance the use of 200 feet of frontage on the south side of the street for a drive-in restaurant and to deny the same use to 166 feet on the north side of the street. This selective zoning is clear, affirmative evidence of the unreasonableness of the ordinance as it applies to the plaintiffs' property.

We concur in the decree entered by the chancellor which approved the master's report recommending the relief prayed for by the plaintiffs. The decree of the Circuit Court will be affirmed.

Affirmed.

SULLIVAN and SCHWARTZ, JJ., concur.