(No. 42721.—

The City of Chicago, Appellee, *vs.* Lawrence Rosser *et al.,* Appellants.

*Opinion filed November 17, 1970.*

Jonathan M. Hyman and John Henry Schlegel, both of Chicago, for appellants.

RICHARD L. CURRY, Corporation Counsel, of Chicago, (MARVIN E. ASPEN and GAYLE F. HAGLUND, Assistant Corporation Counsel, of counsel,) for appellee.

Mr. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

At the conclusion of a bench trial in the circuit court of Cook County, the defendants were found guilty of trespass in violation of chapter 193, section 1.4(b) of The Municipal Code of Chicago and fined $250 each. On this direct appeal, defendants urge the reversal of their convictions on the grounds that they were arrested while engaging in conduct protected under the free speech provisions of the first amendment of the United States constitution and that they were improperly charged under the Chicago trespass ordinance.

The events leading to the arrest of the defendants in this case took place in the City of Chicago on the sixth floor of an office building owned by the American Dental Association. Space in the building is leased to various tenants, and the entire sixth floor of the building is leased to the Catholic Archdiocese of Chicago. There was testimony to the effect that the Archdiocese office was open for business to persons on an appointment basis and that persons who entered the office without an appointment were requested to make one.

On Friday, May 9, 1969, the two defendants and approximately 13 other persons arrived at the sixth floor Archdiocese office and requested an appointment with the Cardinal. They were informed that the Cardinal was not in his office, but the group nevertheless remained on the premises "all day long" until approximately 5:00 P.M. when they left after being told that the offices were going to close. On the following Monday, between 10:00 and 11:00 A.M., the two defendants and approximately 11 other persons arrived again at the sixth floor Archdiocese office and repeated their request for an appointment with the

Cardinal. Again, they were told that the Cardinal was not in his office, and again they continued to "sit in" in the Archdiocese premises until about 4:15 that afternoon when they were requested to leave the premises by the office manager. The defendants and their companions complied with this request and moved into an elevator corridor immediately outside of the Archdiocese office where they continued their "sit in" in apparent protest against their inability to see the Cardinal. The elevator corridor in which the group was sitting was used as a means of access between the building elevators and the entrance to the Archdiocese office and was the only means of access to that office from the elevators.

The office manager of the Archdiocese office testified that he then called the manager of the American Dental Society Building and told him that the group which was then "sitting in" in the elevator corridor had no business with the Archdiocese office and that he did not want them to continue their "sit in" outside the Archdiocese office. After receiving his call, the building manager, who testified that he had supervision and control over the elevator corridor in his capacity as building manager, arrived on the scene at approximately 4:40 P.M. and requested the defendants and others to leave the elevator corridor. The group asked for time to discuss in private the building manager's request, and they were permitted to do so. The building manager left the area and returned approximately ten minutes later. All members of the group departed except the two defendants who continued their "sit in" in the elevator corridor. The building manager again requested the defendants to leave the premises and told them that if they did not do so, he would sign a complaint against them for trespass. The defendants remained. Police officers, who at some undisclosed point in time had arrived on the premises, subsequently instructed defendants to leave and warned them that they would be arrested for trespass if they did not

leave. Again, the defendants refused to leave, and they were then arrested. After their arrest, the defendants peaceably left the premises. It is conceded that at all times during the "sit in" the defendants conducted themselves in a peaceable and orderly manner.

The pertinent portion of the ordinance under which the defendants were convicted provides that "a person commits trespass when he knowingly: * * * (b) remains upon the property, or any part thereof, of another after receiving notice, either oral or written, from the owner or occupant to depart; * * *." (Municipal Code of Chicago, chap. 193, sec. 1.4(b)). The defendants urge that their silent "sit in" was a communicative action intimately associated with speech and therefore protected by the first amendment to the Federal constitution. They argue that the trespass ordinance can not be employed to abridge this protected right. The City of Chicago, on the other hand, argues that the defendants had no constitutionally protected right to remain on the private property of the American Dental Association after being told to leave the premises, and that the trespass ordinance was validly enforced against the defendants' invasion of the building owner's property rights.

Before addressing ourselves to the specific issues presented on this appeal, we think it appropriate to review briefly some general principles which are here pertinent. Although the constitutionally protected first amendment rights are much cherished and under our Federal and State constitutions have been carefully protected, these rights are not absolute. It has never been held that first amendment rights may be indiscriminately exercised at any time in any place and in any manner. In the case of freedom of speech, it has been recognized by both the United States Supreme Court and this court that there is a distinction between "pure speech" and conduct intended to express an idea. (See *Amalgamated Food Employees Union Local 590* v. *Logan Valley Plaza, Inc.* (1968), 391 U.S. 308 at 313, 20

L. Ed. 2d 603, 88 S. Ct. 1601; *Cox* v. *Louisiana* (1964), 379 U.S. 536 at 555, 13 L. Ed. 2d 471, 85 S. Ct. 453; *People* v. *Raby* (1968), 40 Ill.2d 392.) Our Federal and State constitutions also recognize the concept of private ownership of property and the protection thereof (U.S. Const., amend. XIV; Ill. Const., art. II, secs. 2 and 13). It is inevitable that at times the constitutionally protected "rights" of different persons may meet head-on, which calls for careful balancing of the respective interests involved to determine which shall prevail.

The case before us does not involve an alleged abridgment of freedom of speech in publicly owned, operated or controlled areas such as streets, sidewalks, parks or other such public places which have been associated with the exercise of first amendment rights. Rather, we are here confronted with the question of the extent to which a person may exercise his constitutionally protected freedom of speech on the private property of another. Although it has been recognized by the Supreme Court that in cases where property is not ordinarily open to the public, access to it for purposes of exercising first amendment rights may be denied altogether (see *Adderly* v. *Florida* (1966), 385 U.S. 39, 17 L. Ed. 2d 149, 87 S. Ct. 242; *Amalgamated Food Employees Union Local 590* v. *Logan Valley Plaza, Inc.*, 391 U.S. at 320), it has also been recognized that "Ownership does not always mean absolute dominion. The more an owner for his advantage opens up his property for use by the public in general, the more do his rights become circumscribed by the statutory and constitutional rights of those who use it." *Marsh* v. *Alabama* (1946), 326 U.S. 501, 506, 90 L. Ed. 265, 268.

In *Marsh* v. *Alabama,* the Supreme Court held that the Alabama criminal trespass statute could not be enforced to prevent an individual from distributing religious literature on a sidewalk in the business district of Chickasaw, Alabama. Title to the real estate on which the entire town of

Chickasaw was situated was held by a shipbuilding corporation, and it was urged in that case by the State of Alabama that private ownership of the property justified the conviction under the trespass statute of an individual who distributed the literature after having been refused permission to do so by the title-holding corporation. In rejecting this argument, the Supreme Court held that even though the town of Chickasaw was "privately owned" in the sense that title was held by a private corporation, the property had been so opened up to the public that there was an insufficient basis upon which to justify the infringement on the exercise of the first amendment rights of freedom of speech. As the court stated, "The property consists of residential buildings, streets, a system of sewers, a sewage disposal plant and a 'business block' on which business places are situated. * * * the residents use the business block as their regular shopping center. To do so, they now, as they have for many years, make use of a company-owned paved street and sidewalk located alongside the store fronts in order to enter and leave the stores and the post office. Intersecting company-owned roads at each end of the business block lead into a four-lane public highway which runs parallel to the business block at a distance of thirty feet. There is nothing to stop highway traffic from coming onto the business block and upon arrival a traveler may make free use of the facilities available there. In short, the town and its shopping district are accessible to and freely used by the public in general, and there is nothing to distinguish them from any other town and shopping center except the fact that the title to the property belongs to a private corporation." 326 U.S. at 502-503, 90 L. Ed. at 266.

In *Amalgamated Food Employees Union Local 590* v. *Logan Valley Plaza, Inc.,* the Supreme Court again considered the extent to which the rights to freedom of speech may be exercised on privately owned property. In that case, the question was whether peaceful informational picketing

of a business establishment located in a shopping center could be enjoined by the property owner. The property in question was a large shopping center complex with a perimeter of a little less than 1.1 miles. There were parking areas, sidewalks, and other facilities generally found in shopping centers. Title to the entire shopping center area was held by Logan Valley Plaza, Inc. which leased a supermarket building within the shopping center to another privately owned corporation. When the supermarket employed nonunion employees, members of Amalgamated Food Employees Union Local 590 began to picket in front of the supermarket and in the parking lot immediately adjacent thereto. The Supreme Court held that such picketing could not be enjoined. The court stated that "The similarities between the business block in *Marsh* and the shopping center in the present case are striking." (391 U.S. at 317, 20 L. Ed. 2d at 611.) The court noted further that "the general public has unrestricted access to the mall property" (391 U.S. at 318, 20 L. Ed. 2d at 612,) and that "the shopping center premises are open to the public to the same extent as the commercial center of a normal town." (391 U.S. at 319, 20 L. Ed. 2d at 612.) In conclusion, the court stated that "Logan Valley Mall is the functional equivalent of a 'business block' and for First Amendment purposes must be treated in substantially the same manner." 391 U.S. at 325, 20 L. Ed. 2d at 616.

Defendants also rely on *Wolin* v. *Port of New York Authority* (2d cir. 1968), 392 F.2d 83, *cert.* denied 393 U.S. 940 (1968) wherein the Second Circuit Court of Appeals, on the basis of the first amendment, upheld the right of Viet Nam war protesters to set up card tables and distribute leaflets on the second floor of the Port Authority Bus Terminal of New York City. They also refer to *In re Hoffman* (1967), 67 Cal. 2d 845, 434 P.2d 353, where the California Supreme Court upheld similar activity inside the privately owned Los Angeles Union Station, and *In re Lane*

(1969), 71 Cal. 2d 872, wherein the same court upheld the distribution of labor union handbills on a privately owned sidewalk in front of a supermarket on a busy city street.

Directing our attention to the case before us, we do not believe that the elevator corridor outside the Archdiocese office on the sixth floor of the American Dental Association Building in Chicago can be considered functionally, spatially, or in any other pertinent way, equivalent to the town of Chickasaw in *Marsh,* the shopping center in *Logan Valley Plaza,* the Port Authority Bus Terminal in *Wolin,* or the sidewalk in front of the supermarket in *In re Lane.* In the cases relied upon by defendants not only was the private property in question generally open and accessible to the public, but the very nature of the property was such that the public was implicitly, if not explicitly, invited and encouraged to enter upon and use it. Such is not the situation in the case before us. The record supports the conclusion that the elevator corridor on the sixth floor of the American Dental Association Building served the very limited function of providing access to the Archdiocese office, the sole occupant of the sixth floor, which conducted its business on a limited, appointment-only basis. The area was not generally accessible and open to the public within the context of the cases relied upon by defendants nor was there any indication that the public in general was invited or encouraged in any manner to use the area in question.

An owner of private property has the right to operate and maintain his property pursuant to reasonable policies relating to access by the public. The interests of the owner of a general office building in this regard are particularly evident. In the case before us, the defendants were arrested in the elevator corridor where they were "sitting in" after having moved there from the Archdiocese premises where they had previously conducted a "sit in" for the better part of two separate business days. Their arrest occurred only after they had been repeatedly told to leave the premises,

first by the building manager and then by police officers. It is undisputed that the Archdiocese office had no business to transact with the defendants, and although the record does not indicate the precise reason for the "sit in", we believe it reasonable to assume that the only reason that the defendants remained in the elevator corridor was to silently indicate their displeasure over their not being able to see the Cardinal. We are of the opinion that on the facts of this case, the building manager was justified in requiring them to leave the premises and to invoke the Chicago trespass ordinance to enforce their removal after being told by the sole tenant on the sixth floor that the defendants had no business to transact with the tenant and that the tenant did not wish them to remain in the area immediately outside their offices in the elevator corridor. We do not find the action of the building owner in this case to be arbitrary or discriminatory, and we are of the opinion that there was no unconstitutional abridgment of the defendants' first amendment rights.

The defendants' final contention involves the propriety of their being charged under subsection (b) of the Chicago Trespass Ordinance which provides that a trespass is committed when a person "remains upon the property or any part thereof of another after receiving notice, either oral or written, from the owner or occupant to depart". They urge that the proper charge was under subsection (c) of the ordinance which provides that a person is guilty of trespass when he "enters upon property open to the public, or any part thereof, and remains thereon with a malicious and mischievous intent after receiving notice, either oral or written, from the owner or occupant to depart." (Municipal Code of Chicago, chap. 193, sec. 1.4(c)). At the trial, the defendant moved to dismiss the cause on the grounds that the testimony did not support a violation of subsection (b) of the ordinance since the premises on which they were arrested was "open to the public", within the meaning of sub-

section (c) of the ordinance, and there was no evidence of the requisite "malicious and mischievous intent". This motion and a subsequent motion to vacate the judgment of conviction on the same grounds were overruled and with these rulings we concur. As we have indicated above, the elevator corridor in question was accessible to the public to such a limited extent and for such a limited purpose that we do not believe it to be "open to the public" within the meaning of subsection (c) of the ordinance. The defendants were properly charged under subsection (b) of the Chicago trespass ordinance, and the evidence supports their conviction thereunder.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*