**UNITED FEDERAL SAVINGS BANK, a corporation, and Fidelity Federal Savings and Loan Association, a corporation, Plaintiffs,**

v.

**Lee McLEAN, Jr., Defendant.**

**No. 87–1261.**

United States District Court, C.D. Illinois, Peoria Division.

Sept. 1, 1988.

Jack Ball, Blake & Ball, Roger L. Williamson, West Neagle & Williamson, Galesburg, Ill., for plaintiffs.

Tim Swain, Swain, Hartshorn & Scott, Peoria, Ill., for defendant.

## ORDER

MIHM, District Judge.

Presently before the Court is the Defendant's Motion to Dismiss the Complaint on the basis that this Court does not have *in personam* jurisdiction over the Defendant. The Defendant asserts that he is a citizen of the State of Missouri and was not and is not subject to service of process for the relief set forth in the Complaint. The Defendant argues that suit on the guarantee is not the type of action which would provide a basis for *in personam* jurisdiction as to this Defendant under the Long Arm Statute of the State of Illinois, Ill.Rev.Stat., ch. 110, § 2–209 or the Due Process clause of the United States Constitution.

## FACTS

This case arises out of a document denoted as a personal guarantee purportedly signed by the Defendant. The date of execution is shown to be May 12, 1978, three months subsequent to the execution of two real estate mortgages by a corporation, McLean Enterprises, Inc., on February 14, 1978.

The Complaint recites a mortgage foreclosure proceeding in Knox County, Illinois, against the corporate signatory of the mortgages, McLean Enterprises, Inc. (Case No. 87–CH–7). This proceeding resulted in the sale of the real estate in question for $1,100,000 on June 30, 1987.

The Plaintiffs, savings and loan associations, seek to recover in this lawsuit the deficiency between the real estate sale price and the sum allegedly personally guaranteed by the Defendant, in the amount of $862,498.32. The basis of the claim is a document entitled "Agreement as to Conveyance by Mortgagor, Continued Guarantee by Mortgagor and Guarantee by Mortgagor's Grantee." By its own terms, the document was conditioned upon "the actual conveyance" of real estate to the individual Defendant. While the Complaint alleges that the Plaintiffs duly performed all their conditions of the guarantee, there is no separate allegation that the property was, in fact, actually conveyed by the corporation to the individual Defendant.

A complaint was filed by the Plaintiff and against the Defendant in Knox County, Illinois as 87–L–62 on September 4, 1987. Summons was served on the Defendant on September 14, 1987, in Greene County, Missouri. On October 14, 1987, a Petition to Remove this action was filed with the United States District Court for the Central District of Illinois on the basis of diversity of citizenship. On October 14, 1987, the Defendant filed his Motion to Dismiss under Rule 12(b) for lack of personal jurisdiction over the Defendant.

## DISCUSSION

Under 28 U.S.C. § 1441 *et seq.*, removal jurisdiction is based upon the federal court's original jurisdiction over diversity suits. As a general rule, a cause is not removeable unless it is properly before the state court. If a state court lacks jurisdiction over one of the parties, the federal court cannot acquire jurisdiction. *People of the State of Illinois v. Kerr–McGee Chemical Corp.*, 677 F.2d 571 (7th Cir. 1982).

To determine the existence of personal jurisdiction, the federal court must first look to state law long arm statutes, and second, determine whether the exercise of

such jurisdiction is consistent with the Due Process clause of the Fourteenth Amendment. As noted in *O'Hare International Bank v. Hampton,* 437 F.2d 1173 (7th Cir. 1971):

"In situations where federal jurisdiction is based upon diversity of citizenship, in personam jurisdiction 'is determined in accordance with the law of the state where the court sits, with federal law entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee.' (Citation omitted)."

The Illinois Long Arm Statute (Ill.Rev. Stat., ch. 110, § 2–209) provides in relevant part:

"Acts submitting to jurisdiction—Process. (a) Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:

(1) The transaction of any business within this state;

(2) * * *

(3) The ownership, use, or possession of any real estate situated in the state;

(4) * * *

(b) Service of process upon any person who is subject to the jurisdiction of the courts of this state, as provided in this section, may be made by personally serving the summons upon the defendant outside the state, as provided in this Act, with the same force and effect as if those summons had been personally served within the state.

(c) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him or her is based upon this section.

(d) * * *

[*Cook Associates, Inc. v. Lexington United Corp.,* 87 Ill.2d 190, 197–198, 57 Ill.Dec. 730, 429 N.E.2d 847 (1981)–long arm two elements § 2–209 and due process]."

The Defendant's Motion to Dismiss asserts that this Court has no *in personam* jurisdiction over the Defendant pursuant to the Illinois Long Arm Statute. However, the Plaintiff asserts jurisdiction pursuant to two prongs of the statute: (1) transaction of business, and (2) ownership, use or possession of any real estate situated in Illinois.

The issue of *in personam* jurisdiction over a defendant is a very fact specific analysis, regardless of the prong of the Illinois Long Arm Statute being applied. To further complicate the analysis, and as was noted by the Seventh Circuit in the case of *Small v. Sheba Investors, Inc.,* 811 F.2d 1163 (7th Cir.1987), there is a lack of consistent tests used in Illinois to determine *in personam* jurisdiction.

## A. TRANSACTION OF BUSINESS

■ As to the transaction of business prong, a long laundry list of factors have been looked to by varying courts in making the determination of whether *in personam* jurisdiction exists. Keeping in mind that the purpose of the Long Arm Statute is to insure that there is a close relationship between a cause of action against a nonresident defendant and his jurisdictional activity, *Carlson v. Carlson,* 147 Ill.App.3d 610, 101 Ill.Dec. 384, 498 N.E.2d 708 (2nd Dist.1986), the factors which have been consistently addressed by the courts in this analysis have included:

(1) Choice of law provision in the agreement. *Ohare International Bank v. Hampton,* 437 F.2d 1173 (7th Cir.1971). *Ronco, Inc. v. Plastics, Inc.,* 539 F.Supp. 391 (N.D.Ill.1982). *First National Bank of Chicago v. Boelcskevy,* 126 Ill.App.3d 271, 81 Ill.Dec. 380, 466 N.E.2d 1182 (1st Dist.1984).

(2) Contacts between the Defendant and Illinois, e.g.:

(a) Numerous contacts with Plaintiff's Illinois office. *Tatham–Laird and Kudner, Inc. v. Johnny's American Inn, Inc.,* 383 F.Supp. 28 (N.D.Ill.1974). *Capital Associates v. Roberts–Ohbayashi Corp.,* 138 Ill.

App.3d 1031, 93 Ill.Dec. 563, 487 N.E.2d 7 (1985).

(b) Execution of contract while defendant a resident of Illinois. *United Services Auto Association v. Cregor*, 617 F.Supp. 1053 (D.C.Ill.1985).

(c) Numerous telephone calls to Illinois office. *Tabor & Co. v. McNall*, 30 Ill.App. 3d 593, 333 N.E.2d 562 (1975). *Capital Associates*, supra.

(d) "Regularity of activities in Illinois." *Cook Associates v. Lexington*, 87 Ill.2d 190, 57 Ill.Dec. 730, 429 N.E.2d 847 (1981).

(e) Negotiation of contract in Illinois. *Ronco*, supra. *Boelcskevy*, supra. *Aetna Casualty and Surety Co. v. Looney*, 98 Ill.App.3d 1057, 54 Ill.Dec. 444, 424 N.E.2d 1347 (1981).

(f) Seeking the benefits and protections of Illinois law. *Ronco*, supra. *Boelcskevy*, supra. *Morton v. Environmental Land Systems, Ltd.*, 55 Ill.App.3d 369, 13 Ill.Dec. 79, 370 N.E.2d 1106 (1977).

(g) Shipping of products into Illinois in substantial numbers. *Ronco*, supra.

(h) Substantial performance of duties in Illinois. *Boelcskevy*, supra.

In *First National Bank of Chicago v. Boelcskevy*, 126 Ill.App.3d 271, 81 Ill.Dec. 380, 466 N.E.2d 1182 (1984), the action arose from a guarantee made by the plaintiff to an in-state business, which was signed by the defendant guarantor outside of the State of Illinois. The appellate court found that the defendant guarantor was subject to personal jurisdiction pursuant to the Illinois Long Arm Statute and considered the following factors in arriving at this conclusion: who initiated the transaction; where the transaction was entered into; where the performance of the contract was to take place; and, whether the contract expressly provided for the invocation of Illinois law. *First National Bank of Chicago v. Boelcskevy*, 81 Ill.Dec. at 383, 466 N.E.2d at 1185.

Similarly, in *Aetna Casualty and Surety Co. v. Looney*, 98 Ill.App.3d 1057, 54 Ill. Dec. 444, 424 N.E.2d 1347 (1981), the Illinois court found personal jurisdiction over an Oklahoma defendant in a suit based on an indemnity agreement. The court noted that the nexus of the defendant's connection to Illinois was a construction contract, which was to be performed in Illinois; that the defendant had come to Illinois to negotiate the contract; and that while the physical act of signing the indemnity agreement took place in Oklahoma, it was for the purpose of securing and guaranteeing performance of a contract to be performed in Illinois. *Aetna Casualty & Surety Co. v. Looney*, 54 Ill.Dec. at 447, 424 N.E.2d at 1350.

In *Morton v. Environmental Land Systems, Ltd.*, 55 Ill.App.3d 369, 13 Ill.Dec. 79, 370 N.E.2d 106 (1977), the court found that solicitation of a contract in Illinois was activity sufficient to constitute the "transaction of business." *Id.* at 372, 13 Ill.Dec. 79, 370 N.E.2d 106. In *Tabor & Co. v. McNall*, 30 Ill.App.3d 593, 333 N.E.2d 562 (1975), the court found that the defendant clearly performed acts sufficient to constitute the transaction of business in Illinois where:

"The contracts were negotiated by way of phone calls between Wisconsin and Illinois and the confirmation of the contract was sent from Illinois to Wisconsin. Moreover, performance of the contract was to occur in Illinois since delivery of the grain was to be at LaSalle, Illinois. This court has held that similar contracts justify personal jurisdiction in recent decisions. [Citations omitted]." *Tabor & Co. v. McNall*, 333 N.E.2d at 563.

In the instant case, the Plaintiffs argue that the affidavits submitted in opposition to the Defendant's Motion to Dismiss demonstrate that the Defendant contacted the Plaintiffs with a request for waiver of the Due On Sale Clause contained in its mortgage, so that the property secured could be conveyed to the Defendant in an individual capacity. Allegedly, this transaction was being structured so that the Defendant could receive all tax benefits related to the use and ownership of the property.

Further, the Plaintiffs allege that this initial contact was followed by other telephone negotiations which resulted in the instant guarantee agreement. The agree-

ment was executed in Illinois by the Plaintiffs and forwarded to Missouri for the Defendant's signature.

The Plaintiffs assert that the record establishes that the Defendant transacted business in Illinois within the purview of Ill.Rev.Stat., ch. 110, § 2–209 *et seq.* (1985), in that: (1) he initiated the solicitation of the guarantee agreement with two banks, knowing the principal place of business of the Plaintiff bank to be in Illinois; (2) the agreement purportedly involved the transfer of real estate situated in Illinois and subject to certain notes and mortgages executed and filed in Illinois; and (3) both parties' obligations were to be performed in Illinois, as any conveyance of the real estate would require the filing of a deed in Illinois and all payments to have been required by virtue of this guarantee (pursuant to said notes and mortgages), were to be made in Galesburg, Illinois. Lastly, the Plaintiffs argue that a cause of action "arises" from a defendant's jurisdictional acts where it lies in the wake of the commercial activities by which he submitted himself to the jurisdiction of Illinois courts. See, *Morton v. Environmental Land Systems*, 55 Ill.App.3d 369, 13 Ill.Dec. 79, 370 N.E.2d 1106 (1977).

The Defendant does not appear to dispute the state of the law on *in personam* jurisdiction. Rather, the Defendant argues that the record establishes that the specific facts of this case do not lend themselves to a finding that this Court has *in personam* jurisdiction over the Defendant.

Through the Defendant's reply pleading and supplemental memorandum, he establishes that the Defendant had very little, if any, direct contacts with the State of Illinois throughout the relevant time periods. The Defendant establishes that Richard E. Johnson, Chairman of the Board and Chief Executive Officer of United Federal Savings Bank, and Richard P. Strader, an officer with Fidelity Federal Savings and Loan Association, never spoke directly via the telephone with the Defendant concerning the guarantee, never received correspondence from the Defendant regarding the guarantee in his individual capacity, and never met with the Defendant in the State of Illinois for any purpose (with the possible exception of a "vague" recollection by Mr. Strader concerning a trip the Defendant made to Galesburg).

Further, the record establishes that Mr. Strader never had occasion to speak by telephone with the Defendant (Strader Dep. 3–5). He had no occasion to either write or receive any correspondence from the Defendant addressed to him personally (*Id.* at 3). A letter referred to by Mr. Strader dated January 7, 1987, was admitted by the deponent to have been signed by the Defendant in a representative capacity on behalf of McLean Enterprises, Inc. as opposed to Lee McLean, Jr., in an individual capacity. (*Id.* at 3, 4).

The record also shows that a reference made by Mr. Strader in his joint affidavit filed with this court concerning contacts with a Mr. Sturgel, an officer of the Defendant's corporation, was not a direct contact with Mr. Sturgel, but was second hand information from a third party. (*Id.* at 4, 5). Mr. Strader was not involved in forwarding any agreement to the Defendant at Springfield, Missouri for signature. (*Id.* at 5). Mr. Strader admitted that the basis for any claim that Fidelity Federal Savings has against the Defendant would be the document entitled "Guarantee of Grantee" and such a claim is not based upon any other alleged oral agreement. (*Id.* at 6, 7). Further, Mr. Strader admitted that he was not aware that there had ever been an actual conveyance of the subject property to the Defendant, individually. (*Id.*) Mr. Strader's assertions that the Defendant was aware that the property was located in Galesburg was based upon his own assumption. (*Id.* at 8, 9).

Richard E. Johnson testified that on the one or two occasions when he met the Defendant in 1978, the meeting took place at the headquarters of the Defendant's operations in Springfield, Missouri. (Richard E. Johnson Dep. 4). Further, if there had been a visit to Galesburg, Illinois by the Defendant, the deponent could not recall when that was and was very vague as to whether it happened at all. *Id.* Subse-

quent to the meeting in Springfield, Missouri, Johnson testified that he did not have any correspondence or telephone conferences with the Defendant. Rather, the basic correspondence was with Mr. Sturgel. *Id.* at 5 and 6.

Johnson testified that in March or early April 1978, he received a telephone call from Sturgel saying that the McLean Corporation might wish to place the title to the property in the Defendant's name, personally. Sturgel asserted that since there was a Due On Sale Clause, he was inquiring as to whether the Plaintiffs would be willing to waive that clause. Further, Johnson testified that he was told the purpose of this structuring was for the Defendant's tax planning purposes. *Id.* at 7, 8.

Johnson asserts that after speaking with Fidelity it was decided that they would agree to allow the conveyance and assumption by the Defendant if he were to agree to personally guarantee the note. *Id.* at 8. The agreement and guarantee was drafted by the attorneys for Fidelity and was sent on to the Defendant and executed. *Id.* at 9.

Johnson testified that at no time did he request to see the conveyance document, if there was one. Rather, he assumed that the conveyance had taken place. This assumption was based upon insurance policies which listed the Defendant as sole proprietor of the property. *Id.* at 11. Nonetheless, dealings between United Federal and McLean Enterprises, Inc. continued, as opposed to dealing with the Defendant individually. *Id.* The loan was made initially to McLean Enterprises, Inc.

Reviewing the record in light of the factors to which the Court must look in resolving the *in personam* jurisdiction issue, the Court finds that it does not have *in personam* jurisdiction over the Defendant on the basis of transacting business in Illinois. The record is silent as to whether the guarantee contained a choice of law provision. However, the record establishes that there were no contacts by the Defendant in his individual capacity with the Plaintiff's Illinois office. The guarantee was executed by the Defendant in the State of Missouri. There is no evidence that the Defendant, in his individual capacity, made any telephone calls to the Plaintiff's Illinois office, or that he entered into negotiations of the guarantee with the Plaintiff in Illinois.

The factors of shipping of products into Illinois in substantial numbers is not relevant to the present case, nor is regularity of activities in Illinois. The record appears to be silent as to whether there was substantial performance of duties in Illinois, and perhaps is so because this element is not particularly relevant to the circumstances of this case.

Lastly, the Court must review the factor of whether the Defendant sought the benefits and protections of Illinois law. This element is difficult to ascertain in the absence of evidence concerning whether the transaction contained a choice of law provision. However, even if this factor was substantially supported by the record, it would not appear to be sufficient, alone, for this Court to find *in personam* jurisdiction over the Defendant.

For the reasons previously discussed the Court finds that the Defendant's Motion to Dismiss for lack of *in personam* jurisdiction over the Defendant on the basis of transacting business in Illinois is GRANTED.

## B. OWNERSHIP, USE OR POSSESSION

The second prong of the Illinois Long Arm Statute under which the Plaintiff alleges this Court has *in personam* jurisdiction over the Defendant is the "ownership, use or possession of any real estate situated in Illinois." It is this Court's understanding that the Plaintiff's argument is that, in light of the Defendant's "use" of the property situated in Illinois for tax purposes, such "use" of the property is sufficient under both the Illinois Long Arm Statute and Due Process for this Court to find *in personam* jurisdiction. A review of the Illinois case law on this point establishes that this contention is not supported by a case close on its facts to this one.

The parties in their pleadings on the pending Motion to Dismiss fail to cite to any cases regarding the "ownership, use, or possession" prong of the Illinois Long Arm Statute. The Court's independent research on this issue has turned up very few cases regarding this mode of analysis.

Generally, the analysis applied by courts in determining whether the Illinois Long Arm Statute authorizes the exercise of *in personam* jurisdiction over non-residents having an interest in real property in the forum state is a two step process. Assuming that the Illinois Long Arm Statute is constitutional, the Court must determine whether the statute provides for the exercise of jurisdiction under the circumstances presented and whether the non-resident has sufficient minimum contacts with the forum state so that subjecting him to the personal jurisdiction of its courts does not violate his rights to due process. *Long Arm Statutes: In Personam Jurisdiction Over Nonresident Based on Ownership, Use, Possession, or Sale of Real Property,* § 2 (1981) 4 ALR 4th 959–960.

In evaluating whether the statue provides for the exercise of jurisdiction under the circumstances presented, the Court must address the question of whether the non-resident's interest in property is of the type described in the statute, as well as the question of whether the cause of action or claim for relief is one "arising from" his property interest. *Id.* Thus, the Illinois Long Arm Statute generally requires a showing that the claim presented has a direct relationship or nexus with the non-resident's realty in the forum state in order for personal jurisdiction to be found. Where it is found that the Long Arm Statute provides for the exercise of jurisdiction under the circumstances presented, the Court must then go on to determine whether the non-resident has sufficient minimum contacts with the forum state so that subjecting him to the personal jurisdiction of this Court does not violate his rights to due process. *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

It is well established law that the exercise of *in personam* jurisdiction over a non-resident, who has an interest in real property in the forum state pursuant to the Long Arm Statute, only exists where the cause of action against the non-resident "arises from" his interest in realty in the forum state. The essence of this provision is that there must be a direct relationship between the interest in the real estate in the forum state and the cause of action or claim for relief in order for the Court to properly have *in personam* jurisdiction over the Defendant.

In its opinion, the court in *Porter* presented the best discussion that this Court has been able to find concerning what the phrase "ownership, use, or possession" was intended to include under the Illinois Long Arm Statute is presented in the case of *Porter v. Nahas,* 35 Ill.App.2d 360, 362, 182 N.E.2d 915 (1962). The court began by stating that § 17 of the Illinois Civil Practice Act extends jurisdiction of the Illinois courts to all causes of actions arising from the performance of designated acts in the state. *Id.* at 363, 182 N.E.2d 915. The court noted that the requirements for jurisdiction under § 17 are disjunctive, and apply if any one or more of the three grounds set forth in § 17(1)(c) exist, namely, "ownership," "use," or "possession." *Id.* The court found that a tenant under a lease of real estate is in possession and using the real estate. *Id.*

The court in *Porter* discussed the fact that the most common use of this prong of the Illinois Long Arm Statute is by the fee owner to recover possession of real estate from a tenant. The court found that a tenant is entitled to possession, and that in *Porter* the defendant's relation to the real estate property was also that of "user." The Illinois Long Arm Statute embraces "any person in any cause of action arising from the ownership, possession, or use of real estate." *Id.* at 365, 182 N.E.2d 915.

The court went on to note that a tenant, "by the very nature of his relationship with the lessor, is in possession of and using real estate and is necessarily included."

*Id.* The court found *in personam* jurisdiction over the defendants. *Id.*

This Court finds that after reviewing the statute and the case law on this point, the terms "ownership," "possession," and "use" in the statute were intended to connote recognized property interests. Generally, the incidents of ownership have been deemed to include "the right to undisturbed occupation and enjoyment thereof with freedom to use the property as the owner sees fit, subject only to the right of others not to be legally injured by such use and to proper exercise of the police power." *Illinois Law and Practice*, Vol. 30, p. 284. See also, *Roark v. Musgrave*, 41 Ill.App.3d 1008, 355 N.E.2d 91 (1976); *Harrison v. Rapach*, 132 Ill.App.2d 915, 271 N.E.2d 399 (1971); *Marquette National Bank v. Village of Oak Lawn*, 57 Ill.App.2d 31, 206 N.E.2d 531 (1965). The term "owner" has been defined to include one who has the use, control, or occupation of land with a claim of ownership, whether his or her interest is an absolute fee or a less estate. *People ex rel. Hart v. Village of Lombard*, 319 Ill. 56, 149 N.E. 584 (1925).

The term possession has been deemed to be one degree of title. Illinois Law and Practice, Vol. 30, p. 285. See, *Baragiano v. Villani*, 117 Ill.App. 372 (1904). Possession of real estate affords notice to the world of a legal and equitable interest vested in the person in possession. *Id.* See, *Weber v. Shelby*, 116 Ill.App. 31 (1904). See, *Lewis v. Illinois Bell Telephone Co.*, 107 Ill.App.3d 97, 62 Ill.Dec. 822, 437 N.E. 2d 349, (1982); *Harrison v. Rapach*, 132 Ill.App.2d 915, 271 N.E.2d 399 (1971). [Ownership–*Leigh v. Lynch*, 112 Ill.2d 411, 98 Ill.Dec. 19, 493 N.E.2d 1040 (1986)].

■ This Court has been unable to find a case or a treatise which expressly defines the word "use" as it relates to real estate or real property. However, cases which address the issue of ownership and possession of real estate frequently refer to "use" when describing the totality of the property interests vested in the land owner or possessor. From the context of those cases, this Court finds that the word "use" of real estate is deemed by the Illinois

courts to address the purpose to which the property is put (whether it concerns issues of zoning, erecting structures on the property, the type of business for which the property is employed, or the way in which the owner or possessor benefits from the enjoyment of the property). See, *Pioneer Trust & Savings Bank, Trustee, et al v. The County of McHenry*, 41 Ill.2d 77, 241 N.E.2d 454 (1968); *City of Chicago v. Rosser*, 47 Ill.2d 10, 264 N.E.2d 158 (1970).

Generally, an interest which allows use of a particular piece of property by an individual arises either by ownership or right to possession of that property. Barring circumstances involving negative easements and the use of air, light, etc., a right to use does not arise in the absence of an interest in ownership or possession. Unless the Plaintiff in this case can show that the Defendant has one of the statutorily identified interests: ownership, possession or use of the Illinois property, this Court has no authority to exercise *in personam* jurisdiction over the Defendant.

■ The record in this case is very muddled and the facts are not as this Court might like them to be. However, on the basis of the record before it, the Court concludes that there is no document of conveyance or transfer of title of the subject property from McLean Enterprises to Lee McLean, individually, which would establish ownership of the subject Illinois property by the Defendant. The Court assumes that if such a document was properly executed and signed by the relevant parties, it would have been brought forward by this time. Therefore, in the absence of title, the Court finds that the Defendant is not the owner of the Illinois property for the purposes of the Illinois Long Arm Statute.

■ Similarly, the Court finds the record is void of any evidence that the Defendant is in possession of that property. As previously discussed in this Order, there is no evidence that the Defendant resides, transacts business, or has even visited the property at issue. Further, there has been no evidence brought forth as to any agreement which may have been entered into

between the owner of the property and the Defendant by which the Defendant was given right to possession in the absence of ownership. Therefore, the Court finds that the Defendant does not have a possessory interest in the Illinois property.

 As to the issue of use, the Court finds that the record does establish that the Defendant used the subject property so as to come within the ambit of the Illinois Long Arm Statute. The Court recognizes that the traditional definition of use under the statute has been a property interest through which property can be put to whatever purpose the possessor of a use interest desires. Usually, such an interest is accompanied by the property interest of ownership and/or right to possession. However, despite this traditional definition of use, it is this Court's opinion that a more expanded definition of the term is both appropriate and necessary.

In the present case, there is substantial evidence that the Defendant took personal tax deductions on the subject property and that he also purchased insurance policies on the subject property within which he was identified as the sole proprietor. Clearly, the Defendant reaped or would have reaped financial benefits from his acts with this property, which looks very much like "use" to this Court.

In his deposition testimony, the Defendant does not deny that he took personal deductions on the Illinois property on his personal income tax returns. However, he does deny having purchased, maintained, or having any knowledge of the insurance policies which identify him as the sole proprietor of the Illinois property. Rather, he asserts in his deposition and affidavit that this insurance was purchased and maintained by McLean Enterprises without his knowledge.

In this Court's opinion, the taking of deductions on one's personal income tax return, and the purchasing of insurance on subject property constitutes sufficient taking of control over a piece of property to satisfy the use prong of the Illinois Long Arm Statute. Therefore, the Court finds that it does have *in personam* jurisdiction over the Defendant and the Defendant's Motion to Dismiss is DENIED.