La Salle National Bank, as Trustee Under Trust No. 16907, Plaintiff-Appellee, v. Sam Brodsky, Defendant-Appellant.

Gen. No. 49,385.

First District, First Division.

July 27, 1964.

Goldberg & Levin, of Chicago (Allan Sherman, Burton Berger, and Marvin Sacks, of counsel), for appellant.

Arthur Abraham, of Chicago, for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

This is an action brought by the La Salle National Bank, as trustee, and as seller, under Articles of Agreement for Warranty Deed to recover monies which it claims are due under the provisions of the agreement. The defendant filed a counterclaim seeking rescission of the agreement. Defendant appeals from a judgment in favor of plaintiff, and from a dismissal of his counterclaim.

On November 23, 1954, written Articles of Agreement for the sale of property located at 2344 W. Van Buren Street, in Chicago, were entered into between Paul W. Hobbs and Elsie E. Hobbs, his wife, as buyers, and La Salle National Bank, not individually, but

in its capacity as trustee under trust No. 16907, as seller. Some two years later, the interest of the buyers in the agreement was assigned to the defendant, Sam Brodsky, who executed an assumption agreement on October 9th, 1956. Brodsky went into possession of the building, made repairs and improvements, collected the rents and made payments on the contract. Brodsky was still in possession of the property and still collecting rents at the time of the trial which was held on June 23, 1963.

In Count I of the third amended and supplemental complaint plaintiff charged that Brodsky made the monthly payments as provided in the agreement through the month of January, 1962, but failed to make any payments for the months of February through December, 1962, and for the months of January through May, 1963, and therefore there was due the plaintiff the sum of $3,552 plus 6% interest after the due dates. In Count II it was claimed that there was due plaintiff for costs and expenses, including attorney's fees, the additional sum of $1,500, incurred by the plaintiff in enforcing the contract as provided in paragraph 12 of the agreement.

The defendant answered admitting he made payments through January of 1962, but denied that those payments were made under a "valid and proper agreement" and further denied for the same reason that there was any money due the plaintiff under the agreement. The defendant also filed a counterclaim in which he alleged in substance that the purported consent to the assignment of the contract to him was executed by J. Rubenstein, one of the beneficiaries of the trust and not by the trustee and legal owner of the property and therefore null and void. It was further alleged that under these circumstances the defendant would never become legally entitled to a deed to the property because of the underlying lack

262

of mutuality in the purchase agreement and it was for this reason that defendant stopped making payments.

It appears from the evidence that the beneficiaries offered to deliver a trustee's deed to Brodsky, but he refused to sign the note and purchase money mortgage for the balance due under the contract because the trust deed contained a confession clause. This was the case even though the Articles of Agreement themselves contained a confession clause. Benjamin B. Goldberg, one of the beneficiaries, testified that Brodsky refused to sign the note and mortgage unless the purchase price was reduced. This he refused to do. Brodsky, himself, never attempted to determine whether there was any lack of mutuality of obligation by the trustee, nor did he file any action to compel specific performance of his contract.

A trial was held without a jury which resulted in a finding for the plaintiff and judgment was entered against defendant in the amount of $5,052 and costs from which judgment defendant appeals.

The trust agreement entered into between the La Salle National Bank, as trustee, and the beneficiaries provides:

> (A) That the interest of any beneficiary hereunder shall consist solely of a power of direction to deal with the title to said property and to manage and control said property as hereinafter provided, and the right to receive the proceeds from rentals and from mortgages, sales or other disposition of said premises, . . .

> . . . . . .

> (E) It is understood and agreed by the parties hereto and by any person who may hereafter become a party hereto, that said La Salle National Bank will deal with said real estate only when

authorized to do so in writing, and that it will make deeds for or otherwise deal with the title to said real estate on the written direction of such person or persons as may be the beneficiary or beneficiaries at any time, . . .

. . . . . .

(F) The beneficiary or beneficiaries hereunder in his, her, or their own right shall have the management of said property and control of the selling, renting and handling thereof, and shall collect and handle the rents, earnings avails and proceeds thereof, . . . no beneficiary hereunder shall have any authority to contract for, or in the name of the trustee, or to being the trustee personally.

The defendant's arguments radiate from the fact that the Articles of Agreement were not executed by the La Salle National Bank, as trustee under trust No. 16907, but by J. Rubenstein, one of the beneficiaries of the trust. The defendant claims that the agreement is unenforceable since a beneficiary of a land trust has no power to act for the trustee and cannot bind the trustee. The Articles of Agreement, on behalf of the bank, were signed, "La Salle National Bank, as trustee, by J. Rubenstein, agent and beneficiary." The consent to the assignment from the original purchaser to Brodsky was signed, "J. S. Rubenstein, agent of the La Salle National Bank, as trustee, under trust #16907." Rubenstein admitted that he had received no formal authority from the bank to execute the agreement.

The defendant cites numerous cases for the proposition that: The beneficiary of the usual type of land trust has no power to act for the trustee and cannot bind the trustee with reference to dealing with the title to the property or in any other manner. Gallagher & Speck v. Chicago Title and Trust Co., 238 Ill App 39; Schneider v. Pioneer Trust & Sav. Bank,

264

26 Ill App2d 463, 168 NE2d 808; Brazowski v. Chicago Title and Trust Co., 280 Ill App 293; Robinson v. Chicago Nat. Bank, 32 Ill App2d 55, 176 NE2d 659; Koehler v. Southmoor Bank & Trust Co., 40 Ill App2d 195, 189 NE2d 22; Chicago Federal Sav. & Loan Ass'n v. Cacciatore, 33 Ill App2d 131, 178 NE2d 888. We have no quarrel with the long standing rule of Illinois law so cited to us, however, defendant has failed to take cognizance of an exception to this rule which finds expression in his own cases. The Gallagher case, for example, does indeed point out that a beneficiary of a trust may not deal with land in such trust as if it were his own. That case involved an attempt by a heating contractor to collect from the trustee the price of a steam plant which had been installed on trust property at the orders of the beneficiary, but without the knowledge of the trustee. The court, in holding for the trustee, said that there was not, "[A]ny evidence tending to prove *a subsequent ratification by defendant of* Kelley's contract, or any acceptance of the benefits thereof, with knowledge of the same." (At page 42, emphasis added.) The case of Schneider v. Pioneer Trust & Sav. Bank, 26 Ill App2d 463, 168 NE2d 808, also makes this point. There the question was whether a beneficiary of a trust could accept an offer directed at the trust, but made solely to the trustee. The Court said, "Under the terms of the offer as written, the only party entitled to accept was the trustee bank. *It is stipulated that the bank never accepted the offer.* Hence, there was never a valid contract formed. . . ." (At page 466, emphasis added.) The thrust of these cases and others (see, Wloczewski v. Kozlowski, 395 Ill 402, 70 NE2d 560) is that the trustee can neither hold others nor be held himself where he neither signs the contract nor binds himself to the authority of his purported agent.

 In the case at bar we feel that although the trustee may not have been bound at the date of the

265

agreement, it later bound itself by ratifying the. contract. Under the terms of the trust, and with the management and control of the property in the hands of the beneficiaries, and with Brodsky in open possession of the property, collecting the rents, making improvements and making monthly payments, it seems to us untenable to contend that the trustee was not bound by the agreement. We do not, however, find conclusive evidence in the record to show that the La Salle National Bank was the recipient of the defendant's payments and we thus turn to a ground other than "acceptance of benefits" upon which to base the plaintiff's ratification. It is the well established, if infrequently litigated, rule in this State that a principal, by instituting an action to enforce a contract made by an agent without proper authority, will be deemed to have ratified it. Connett v. City of Chicago, 114 Ill 233, 29 NE 280; Garrett v. John V. Farwell Co., 102 Ill App 31 (reversed on other grounds, 199 Ill 436, 65 NE 361); Hamilton v. DeLong, 147 Ill App 364; 1 ILP Agency, sec 208 and for recent affirmance of the rule, see 2d Restatement of Agency, sec 97.

In a field kindred to this case, the Illinois Supreme Court has held that an initial lack of mutuality is not always a bar to specific performance. In Gould v. Stelter, 14 Ill2d 376, 152 NE2d 869, the Court stated at p 381, "When the contract has been signed by the vendor, the act of the purchaser in filing suit for specific performance renders the contract mutual. (Laegeler v. Bartlett, 10 Ill2d 478, 140 NE2d 702; Estes v. Furlong, 59 Ill 298.)" The court went on to say on p 382, "Mutuality is a loaded word; it has overtones of fairness that tend to obscure what is actually happening." In his concurring opinion in the same case, Mr. Justice Daily says at p 383: "Since 1904 the courts of this state have consistently held that specific performance of a real estate contract may be denied where there is lack of vendor-vendee mutuality of

remedy. Although the original pronouncement of this doctrine in Gage v. Cummings, 209 Ill 120, 70 NE 679, stated that such mutuality must exist at the time the contract was executed, this rule has since been modified in subsequent decisions so as to require such mutuality, not at the outset of the initial obligation, but only upon commission of subsequent acts. Thus it has been held that specific performance may be demanded . . . where the unbound party submits to the jurisdiction of the court so as to create mutuality. Laegeler v. Bartlett, 10 Ill2d 478, 140 NE2d 702." We hold that the institution of this suit by the La Salle National Bank ratified the Articles of Agreement.

■■ There is only one argument open to defendant after the plaintiff has shown that it ratified the Articles of Agreement by attempting to enforce them in a lawsuit. The defendant contends that he tendered the property back to Rubenstein, the beneficiary, before the plaintiff here filed suit. If this were true then defendant could rely upon the well settled rule that a party who contracted with an unauthorized agent may withdraw prior to the principal's ratification. Plaintiff contended below that no rescission of the contract and tender of the property ever took place. The trier of facts found for the plaintiff; we see no reason to disturb his decision.

■■ The defendant next contends that the award of $1500 to plaintiff for costs, expenses and attorney's fees was completely unwarranted and entirely unreasonable. It is argued that there was no proof offered at any time as to what were plaintiff's costs and as to the amount of attorney's fees it had incurred. The allowance of fees generally rest in the sound discretion of the trial court, and unless such discretion is clearly abused, its exercise will not be interfered with. Ylonen v. Ylonen, 2 Ill2d 111, 117 NE2d 98. Paragraph 12 of the Articles of Agreement expressly provides:

12. That the Purchaser shall pay to the Seller all costs and expenses, including attorney's fees, incurred by the Seller in any action or proceeding to which Seller may be made a party by reason of being a party to this agreement, and that the Purchaser will pay to the Seller all costs and expenses, including attorney's fees incurred by the Seller in enforcing any of the covenants and provisions of this agreement and incurred in any action brought by Seller against the Purchaser on account of the provisions hereof, and all such costs, expenses and attorneys' fees, may be included in and form a part of any judgment entered in any proceeding brought by the Seller against the Purchaser on or under this agreement.

There was no request by defendant for the taking of testimony as to fees in this case. If a hearing is not requested the court may grant fees in an amount based on its own experience. Jones v. Jones, 48 Ill App2d 232, 198 NE2d 195. In the case at bar the trial court had the entire record before it. We think the allowance of $1500 for attorney's fees under the facts and circumstances in this case was reasonable and amply supported by the record.

For the reasons stated the judgment of the Superior Court will accordingly be affirmed.

Affirmed.

MURPHY, P. J. and KLUCZYNSKI, J., concur.