AETNA CASUALTY AND SURETY COMPANY, Plaintiff-Appellee, *v.*
ROBERT L. LOONEY *et al.*, Defendants-Appellants.—(R. F. VANCE *et al.*,
Defendants.)

Fourth District    No. 17027

Opinion filed August 7, 1981.

James L. Magill, of Rhodes, Magill, Magill & Ray, of Springfield, for appellants.

Edward F. Casey, of Casey and Casey, of Springfield, for appellee.

Mr. JUSTICE GREEN delivered the opinion of the court:

Defendants, Robert L. and Doris M. Looney, appeal a summary judgment in the sum of $61,849.61 entered in the circuit court of Sangamon County on February 5, 1981, in favor of plaintiff and against them and defendants, R. F. and Mary Vance. The suit was commenced by plaintiff against the four defendants on February 23, 1979. It was brought on a contract purportedly signed by the four defendants in which they agreed to indemnify plaintiff for liability it might incur as surety on a contractor's performance bond upon which defendants, Robert L. Looney and R. F. Vance, were principals. We affirm.

Defendants Looney assert that: (1) the circuit court did not have jurisdiction of their person; (2) the court erred in denying their motion to dismiss based upon the doctrine of *forum non conveniens*; (3) the action was barred by *res judicata*; and (4) a question of fact existed as to whether defendant Doris M. Looney was bound by the instrument of indemnity.

For the purposes of passing upon the issues raised, the following additional facts were sufficiently shown in support of the rulings made. Plaintiff was a Connecticut corporation engaged in the business of selling insurance and surety bonds in Illinois and elsewhere. Defendants were residents of the State of Oklahoma. During 1968, defendants were principal shareholders, directors and officers in V & W Pipeline Construction Company (V & W) which contracted with Central Illinois Public Service Company (CIPS) to construct certain gas pipelines in Illinois. Defendants Looney were husband and wife, as were defendants Vance. V & W was loosely organized and may not have issued any certificates for its shares of stock. On September 10, 1968, the male defendants applied to plaintiff in Oklahoma for a performance bond in connection with the contract for the pipelines construction. Plaintiff agreed to furnish such a bond and executed one upon which both V & W and the male defendants had signed as principal(s) and upon which plaintiff appeared as surety. The indemnity agreement upon which this suit was based was attached to the application for the bond. It appeared to have been signed by all defendants. The bond and the indemnity agreement were executed in Oklahoma. V & W subsequently defaulted on the construction contract and plaintiff then paid $61,849.61 to CIPS and various subcontractors in settlement of their demands arising from the contract.

Defendants Looney were personally served by summons in Oklahoma. They then made a motion under section 20 of the Civil Practice Act

(Ill. Rev. Stat. 1979, ch. 110, par. 20) on special and limited appearance seeking to quash the service and thus challenging the jurisdiction of the court over their person. Various documents were filed in support of and in opposition to the motion. After a hearing, the motion was denied.

Plaintiff maintains that the personal service it obtained on defendants Looney in Oklahoma was sufficient to obtain *in personam* jurisdiction of them under the so called "long-arm" provisions of sections 16 and 17(1)(a) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, pars. 16, 17(1)(a)). Section 16 provides for personal service upon a party outside the boundaries of the State. Such service is stated to have the same "force and effect" as personal service within the State if the party "has submitted to the jurisdiction of the courts of this State." Section 17(1)(a) provides that among the ways a party may submit to the jurisdiction of such courts is by "[t]he transaction of any business within this State." Ill. Rev. Stat. 1979, ch. 110, par. 17(1)(a)).

As to the defendants Looney, the issue before the court on the section 20 motion was whether they had transacted business within the State of Illinois in connection with the matter involving the indemnity agreement. Plaintiff maintains defendants had. Defendants maintain that because their activities were limited to the State of Oklahoma, they had not done so. We conclude that the trial court's ruling was correct.

■■ The intent of section 17 is to assert *in personam* jurisdiction over nonresident defendants to the extent permissible under constitutional due process requirements. (*Nelson v. Miller* (1957), 11 Ill. 2d 378, 143 N.E.2d 673.) These presently recognized requirements were first set forth in *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158, to be that the party served must have such "minimum contacts" with the forum State that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." Subsequently, the United States Supreme Court stated in *Hanson v. Denckla* (1958), 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 1298, 78 S. Ct. 1228, 1240, that:

> "* * * it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

This court was confronted with the application of the "transaction of any business within the State" provision of section 17(1)(a) of the Civil Practice Act in *First Professional Leasing Co. v. Rappold* (1974), 23 Ill. App. 3d 420, 319 N.E.2d 324. In that case the plaintiff, an Illinois corporation, filed suit in Illinois against a California resident, seeking the amount due on an allegedly defaulted equipment lease agreement. The defendant lessee had never been physically present in Illinois for any

transaction in connection with the litigation. The lease was executed in Illinois in that the last signature, that of the lessor, was appended here. The defendant had placed his signature on the lease in California and the leased chattel was delivered to him there. Later, it was sold to him there by the plaintiff. Without the defendant's knowledge, the plaintiff had pledged its interest in the lease to an Illinois bank. In a split decision, this court held the defendant to have transacted business in this State and upheld the trial court's exercise of jurisdiction over him.

Section 17(1)(a) was also held to have conferred jurisdiction over nonresident guarantors of a chattel lease in a suit by an assignee of the lessor seeking recovery for payment due on the lease in *O'Hare International Bank v. Hampton* (7th Cir. 1971), 437 F.2d 1173. Only one of the guarantors had been in Illinois in connection with the matter. The guaranty clause stated it was to be governed by Illinois law. The negotiations for the lease had begun by a phone call from one of the guarantors to the Chicago office of the lessor. The court noted that the guarantors had some projected interest in the chattel rented. The court then indicated that the chattel was being protected by the laws of Illinois and said that the guarantors "should not be in the position, even though indirectly, to enjoy the fruit but to disavow the situs of the tree from which the fruit was derived." 437 F.2d 1173, 1177.

■■ Under the general principles of *International Shoe Co.* and *Hanson* and by analogy to the foregoing cases applying section 17(1)(a), we uphold the trial court determination that defendants Looney had transacted business in Illinois within the meaning of the section. The nexus of their connection to the State was that the construction contract for which the bond was issued was to be performed in Illinois. It was not disputed that defendant R. F. Vance had come into Illinois to negotiate the contract and reported back to Robert L. Looney in Oklahoma. Subsequent to these conversations V & W was organized and chartered as an Illinois corporation. The physical act of the signing of the indemnity agreement took place in Oklahoma, but it was for the purpose of securing and guaranteeing performance of a contract to be performed in Illinois and governed by Illinois law. V & W was loosely organized and Robert L. Looney was required by the contracting parties to be a principal on the performance bond. Prior to the filing of the instant suit, both Looneys were shown to have contributed money to an Illinois attorney to file suit in Illinois against CIPS seeking to delay that party from obtaining enforcement of the performance bond.

All of the foregoing activities of the Looneys were motivated by their financial interest in the Illinois construction contract which was originally hoped to be the "tree from which the fruit was to be derived." Their contacts with Illinois met the minimum contacts test and notions of fair

play and substantial justice are not offended by requiring them to defend in this State. *International Shoe Co.*

We dispose of defendants' other contentions more summarily.

■■ ■ The doctrine of *forum non conveniens* is one whereby a party severely inconvenienced by the forum chosen may have the case transferred to a more convenient forum, if that is possible, or dismissed so that it may then be refiled in the more appropriate forum. The doctrine is founded in considerations of fundamental fairness and sensible and efficient judicial administration which serves the convenience of the parties and the ends of justice. (*A. E. Staley Manufacturing Co. v. Swift & Co.* (1978), 65 Ill. App. 3d 427, 382 N.E.2d 667, *aff'd in part, rev'd in part* (1980), 84 Ill. 2d 245, 419 N.E.2d 23.) In applying the doctrine, much discretion is left to the court to whom the request for change is made. (*Gulf Oil Corp. v. Gilbert* (1947), 330 U.S. 501, 91 L. Ed. 1055, 67 S. Ct. 839.) Here, defendants raised issues both as to the execution of the indemnity agreement and as to the extent to which V & W had failed in its performance on the construction contract. As to the latter issue, most of the evidence would have been most readily accessible in Illinois. Ease of access to proof is one of the most significant factors in determining whether the doctrine should be applied. (*Gulf Oil Corp.*) No abuse of discretion occurred in the trial court's ruling.

■■ Defendants Looneys' claim that the action against them is barred by *res judicata* is based upon an action on the indemnity agreement previously brought against them by plaintiff in Oklahoma. However, the record here shows that action to have been dismissed "without prejudice for failure to prosecute." Obviously, such an order does not operate as a decision on the merits and does not give rise to a defense of *res judicata*. (See *Kutnick v. Grant* (1976), 65 Ill. 2d 177, 357 N.E.2d 480.) Defendants point to *Miller Brewing Co. v. Jos. Schlitz Brewing Co.* (7th Cir. 1979), 605 F.2d 990, a case concerning whether a decision against a party in a case is binding on that party in subsequent litigation with another party. That case is not applicable here partly because no issue was decided in the Oklahoma case. The trial court properly rejected the *res judicata* defense.

■■ Defendants' final claim that a factual issue existed as to whether Doris M. Looney was bound on the indemnity agreement is based upon her answer denying she was so bound and her verified answer to an interrogatory denying that she signed the agreement and stating that her husband did so without her knowledge. Plaintiff maintains that the record before the court conclusively shows that she had ratified her husband's act of signing. It relies upon the rule that a principal ratifies the act of a purported agent in signing an instrument when the principal brings suit or defends on the basis of the proper execution of the instrument. *La Salle National Bank v. Brodsky* (1964), 51 Ill. App. 2d 260, 201 N.E.2d 208;

*Karetzkis v. Cosmopolitan National Bank* (1962), 37 Ill. App. 2d 484, 186 N.E.2d 72; 3 Am. Jur. 2d *Agency* §173 (1962).

Plaintiff points out that a certified copy of the record of the Oklahoma proceeding filed here by Doris Looney in support of her section 20 motion showed that in that action her answer had admitted the execution of the indemnity agreement. The answer constituted a judicial admission in that case but was not binding on her in subsequent litigation. (*Chambers v. Appel* (1945), 392 Ill. 294, 64 N.E.2d 511; E. Cleary & M. Graham, Handbook of Illinois Evidence §802.11, at 420 (1979).) However, in support of her section 20 motion Mrs. Looney also filed the affidavit of her husband stating that he had signed the instrument for her with her permission. She was thus basing her right to have the summons quashed upon the theory that an act binding her to the instrument had taken place in Oklahoma. She was thus basing her defense to the proceeding upon the validity of her husband's placing her name on the document. In doing so she ratified this act.

As no factual issue existed and because of the propriety of the trial court's other rulings, we affirm the summary judgment as to both the Looney defendants.

Affirmed.

TRAPP, P. J., and WEBBER, J., concur.