**RONCO, INC., an Illinois corporation, and Ronco Teleproducts, Inc., an Illinois corporation, Plaintiffs,**

v.

**PLASTICS, INC., a Texas corporation, John C. Parker, individually, and William J. Dacus, individually, Defendants.**

**No. 81 C 4141.**

United States District Court, N. D. Illinois, E. D.

May 13, 1982.

Martin M. Ruken, Michael P. Greenwald, Friedman & Koven, Chicago, Ill., for plaintiffs.

William Farley, McDermott, Will & Emery, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

MARSHALL, District Judge.

Plaintiffs, Ronco, Inc. and Ronco Teleproducts, Inc. are Illinois corporations with their principal places of business in Elk Grove Village, Illinois. While they are separate corporate entities, they are treated as

one by the parties, and will be so treated for purposes of the instant ruling (hereinafter "Ronco"). Defendant Plastics, Inc. is a Texas corporation with its principal place of business in Jacksonville, Texas (hereinafter "Plastics").

In December, 1979, Ray Norris, an independent marketing consultant located in Texas, contacted Ronco's corporate office located in Los Angeles, California. Affidavit of John C. Parker ¶ 7. Norris informed Ronco that Plastics might be able to manufacture injection molded products for Ronco. In response to the call, Ronco sent Plastics one of its products, a record vacuum, so that Plastics could determine if it could produce this product for Ronco.

In early 1980, Plastics sent employees to Ronco's Los Angeles office to examine Ronco's tooling for the part in question and to negotiate the terms of an agreement for its manufacture. *Id.* ¶ 8.

■ Ronco employees also visited Plastics' Texas plant during this period. In early April, 1980, an oral agreement was reached under which Plastics would manufacture and assemble the record vacuum at its Jacksonville, Texas, plant. *Id.* ¶¶ 9–10. The agreement was memorialized when Ronco sent to Plastics its purchase order indicating that it would purchase 195,000 "Ronco Record Vacuums" from Plastics for a total purchase price of $477,750.00. *Id.* ¶ 9. On its face, the purchase order indicates that it is not binding on Ronco until signed by two of its officers. The purchase order is an offer, which is accepted by the

vendor, Plastics, when signed by an appropriate person in the lower left-hand corner. The purchase order is dated April 16, 1980, is signed by a Ronco officer, and the offer is accepted by John C. Parker. The purchase order was executed by Parker, who is a vice president of Plastics, in Texas.[1] The acceptance is dated September 3, 1980. The purchase order indicates that Parker and William J. Dacus, who was then Chairman of the Board of Plastics, *see* Affidavit of William J. Dacus ¶ 1, jointly and severally guaranteed Plastics' performance.[2]

On September 16, 1980, Parker appeared in Ronco's Elk Grove office. Apparently, the contract between Ronco and Plastics was discussed, and Parker initialed changes in the production schedule. Second Supplemental Affidavit of John C. Parker, ¶ 8. The contract states that it shall be governed by the law of Illinois. Complaint Ex. B at 3. The contract also states that delivery is to be made by Plastics to Ronco in Elk Grove, Illinois.[3]

■ In October, 1980, Plastics shipped the record vacuums to Ronco. Over 60 percent of the vacuums were shipped to Illinois. Affidavit of Earl Rosenstein ¶ 8. It appears that the shipments to Illinois were actually "freight collect," despite the provisions of the contract. Accordingly the cost for shipping was paid by Ronco. Supplemental Affidavit of John C. Parker ¶ 6. Ronco alleges that the bulk of the vacuums delivered were defective, and seeks damages for breach of contract, breach of warrant, negligence[4] and fraud.[5] Defendants

---

1. Actually, there is a dispute as to where Parker was when he executed his acceptance on behalf of Plastics. Plaintiffs claim this occurred on September 16, 1980, when Parker was in Illinois. However, on its face, the purchase order indicates that it was executed on September 3, when everyone agrees Parker was in Texas. Under Illinois law, plaintiffs may not seek to prove a term of the contract inconsistent with any term appearing in this nonintegrated writing. *See* Ill.Rev.Stat. ch. 26, § 2·202(b) (1979). Whether or not the date of execution is a "term" within the meaning of § 2 202(b), we think the policy if not the letter of the statutory parol evidence rule prohibits plaintiffs from proving the contract was executed on September 16.

2. The purchase order incorporates by reference a July 10, 1980 confirmatory memorandum signed by Parker in Texas.

3. This was apparently not the only transaction involving these parties. During 1980, Ronco and Plastics seem to have contracted for Plastics to manufacture a "Ronco U.S. Food Dehydrator," Affidavit of Earl Rosenstein ¶ 11. The record does not reveal what became of this contract.

4. Plaintiffs' negligence claim, however, is meritless. Under Illinois law, which all parties agree controls in this diversity case, one who suffers purely economic losses from an alleged breach of contract may not maintain a separate

have moved to dismiss the complaint for lack of personal jurisdiction. Fed.R.Civ.P. 4(d)(3) requires that we look to the Illinois long-arm statute in order to determine whether this court can assert jurisdiction over defendants under it. The statute provides, in pertinent part,

> (1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts:

> (a) The transaction of any business within this State.

> . . . . .

Ill.Rev.Stat. ch. 110, § 17(1) (1979).

It is true that a number of factors which have been used to support a conclusion that a defendant has transacted business in Illinois within the meaning of § 17(1)(a) are absent in this case. For example, it has been held that a defendant who initiates a transaction by seeking out a citizen of Illinois and proposing a business transaction has satisfied the statute. *See Telco Leasing, Inc. v. Marshall County Hospital*, 586 F.2d 49, 52 (7th Cir. 1978) (per curiam); *Hutter Northern Trust v. Door County Chamber of Commerce*, 403 F.2d 481 (7th Cir. 1968); *Franchise Architects, Consultants for Franchising, Inc. v. Tuneomize, Inc.*, No. 81 6710, slip op. at 5 (N.D.Ill. April 21, 1982); *Wessel Co. v. Yoffee & Breitman Management Corp.*, 457 F.Supp. 939, 941 (N.D.Ill.1978); *Geneva Industries, Inc. v. Copeland Construction Co.*, 312 F.Supp. 186 (N.D.Ill.1970); *Chicago Film Enterprises v. Jablanow*, 55 Ill.App.3d 739, 13 Ill.Dec. 466,

371 N.E.2d 161 (1977). Here, the contract was initiated by a third party, and all solicitation apparently took place in conversations between a Texas-based marketing consultant and Ronco's Los Angeles office. Also absent is the necessity under the contract for defendant to engage in substantial performance of its contractual duties in Illinois, a factor supporting jurisdiction under the statute. *See United States Railway Equipment Co. v. Port Huron & Detroit Railroad Co.*, 495 F.2d 1127, 1130 (7th Cir. 1974); *Aetna Casualty & Surety Co. v. Looney*, 98 Ill.App.3d 1057, 54 Ill.Dec. 444, 424 N.E.2d 1347 (1981); *Woodfield Ford, Inc. v. Akins Ford Corp.*, 77 Ill.App.3d 343, 32 Ill. Dec. 750, 395 N.E.2d 1131 (1979); *International Merchandising Associates, Inc. v. Lighting Systems, Inc.*, 64 Ill.App.3d 346, 350–54, 20 Ill.Dec. 838, 843–45, 380 N.E.2d 1047, 1052–54 (1978); *Artoe v. Mann*, 36 Ill.App.3d 204, 343 N.E.2d 647 (1976); *Colony Press, Inc. v. Fleeman*, 17 Ill.App.3d 14, 308 N.E.2d 78 (1974); *Cook Associates, Inc. v. Colonial Broach & Machine Co.*, 14 Ill. App.3d 965, 304 N.E.2d 27 (1973). Clearly, the bulk of the performance called for in the contract was to be at Plastics' plant in Texas.[6] Another factor supporting jurisdiction, acceptance of the contract in Illinois, *see International Merchandising Associates, Inc. v. Lighting Systems, Inc.*, 64 Ill.App.3d 346, 351–52, 20 Ill.Dec. 838, 242–43, 380 N.E.2d 1047, 1051–52 (1978), is also absent.

However, these factors do not compel the conclusion that Plastics has not transacted business in Illinois within the meaning of § 17(1)(a). In three significant ways, Plastics did transact business in Illinois.

■ First, Plastics, through an employee, engaged in negotiations related to the con-

---

cause of action sounding in tort. The law of contract, not tort, is the appropriate vehicle for relief. *Album Graphics, Inc. v. Beatrice Foods Co.*, 87 Ill.App.3d 338, 42 Ill.Dec. 332, 408 N.E.2d 1041 (1980).

**5.** Similarly, plaintiffs' fraud action is meritless. The only allegation of fraud is that defendants had no intention to perform when the contract was made. However, an allegation such as this, involving no misrepresentation of a pres-

ently existing fact, does not state a cause of action in fraud under Illinois law. *See Polivka v. Worth Dairy, Inc.*, 26 Ill.App.3d 961, 328 N.E.2d 350 (1975).

**6.** We do not choose to resolve the disputed question of whether Plastics' performance included shipping into Illinois. Regardless of the answer to that question, it is clear that the great majority of its performance was in Texas.

tract in Illinois, when, on September 16, it sent Parker to Elk Grove. Parker, by his own admission, discussed the transaction while in Elk Grove, and initialed changes made in the contract. *See* Second Supplemental Affidavit of John C. Parker ¶¶ 5–10; Affidavit of John C. Parker, ¶ 12. At the meeting, the details of the transaction were laid out, and legally binding contractual changes were made. If this is not "transacting business in Illinois" it is difficult to imagine what is. When a defendant comes to Illinois and engages in negotiations of some substance regarding the transaction from which the cause of action arises, then the defendant is subject to suit in Illinois under § 17(1)(a). *See Scoville Manufacturing Co. v. Dateline Electric Co.*, 461 F.2d 897 (7th Cir. 1972); *Consolidated Laboratories, Inc. v. Shandon Scientific Co.*, 384 F.2d 797, 802 (7th Cir. 1967); *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, No. 78 C 3541, slip op. at 20–21 (N.D.Ill. Jan. 22, 1982); *In re Oil Spill by the Amoco Cadiz*, 491 F.Supp. 170, 174 (N.D.Ill.1979); *United Air Lines v. Conductron Corp.*, 69 Ill.App.3d 847, 853–55, 26 Ill.Dec. 344, 348–49, 387 N.E.2d 1272, 1276–77 (1979). *See also Cook Associates, Inc. v. Lexington United Corp.*, 87 Ill.2d 190, 198–99, 57 Ill.Dec. 730, 733–34, 429 N.E.2d 847, 850–51 (1981).[7]

■ Second, defendants transacted business in Illinois by voluntarily seeking the benefits and protections of Illinois law.

The contract which defendants entered stated that it would be governed by the law of Illinois. By choosing to apply Illinois law to this transaction, defendants sought to invoke the protections and benefits of the law of Illinois. *See United States Railway Equipment Co. v. Port Huron & Detroit Railroad Co.*, 495 F.2d 1127 (7th Cir. 1974); *O'Hare International Bank v. Hampton*, 437 F.2d 1173, 1177 (7th Cir. 1971). By selecting the law of Illinois, defendants obviously intended that a breach of the contract would have consequences under Illinois law, and presumably also intended to utilize the protections of that law had Ronco breached the contract. *See Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, No. 78 C 3451, slip op. at 20 (N.D.Ill. Jan. 22, 1982). When a defendant voluntarily invokes the benefits and protections of Illinois law, he transacts business in Illinois within the meaning of the statute. *See id.; Rosenthal & Co. v. Dodick*, 365 F.Supp. 847, 850 (N.D. Ill.1973); *Woodfield Ford, Inc. v. Akins Ford Corp.*, 77 Ill.App.3d 343, 346, 395 N.E.2d 1131, 1135 (1979); *AAAA Creative, Inc. v. Sovereign Holidays, Ltd.*, 76 Ill. App.3d 514, 32 Ill.Dec. 119, 395 N.E.2d 66 (1979); *Mergenthaler Linotype Co. v. Leonard Storch Enterprises, Inc.*, 66 Ill.App.3d 789, 797, 23 Ill.Dec. 352, 358, 383 N.E.2d 1379, 1385 (1978); *Chicago Film Enterprises v. Janblanow*, 55 Ill.App.3d 739, 13 Ill.Dec. 466, 371 N.E.2d 161 (1977).

---

**7.** The answer would be different had Parker come to Illinois for some purpose other than engaging in negotiations relating to the contract. *See Kaye-Martin v. Brooks*, 267 F.2d 394, 397–98 (7th Cir. 1959), *cert. denied*, 361 U.S. 832, 80 S.Ct. 84, 4 L.Ed.2d 75 (1960).

Defendants rely on a line of cases holding that an out-of-state defendant does not transact business in Illinois merely by contracting an Illinois resident and negotiating with him via telephone or telex, since the defendant in such a case has not transacted business *in* Illinois, but rather has transacted business *with* an Illinois resident. *See Caicos Petroleum Service Corp. v. Hunsaker*, No. 80 C 6228, slip op. at 5–6 (N.D.Ill. April 28, 1982); *Royal Globe Insurance Co. v. Logicon, Inc.*, 487 F.Supp. 1245 (N.D.Ill.1980); *Wessel Co. v. Yoffee & Breitman Management Corp.*, 457 F.Supp. 939, 941 (N.D.Ill.1978). Here, however, Plastics did send an employee into Illinois to transact business; the transaction was in Illinois, not merely with an Illinois corporation. Defendants further argue that Parker was "lured" into Illinois by Ronco, and that § 17 does not permit jurisdiction to be established by such "luring." In no sense was Parker "lured" into Illinois. Defendants' argument might have merit had Plastics been contacted initially by Ronco, and Plastics' employee invited to Illinois solely by the unilateral act of Ronco. However, this transaction was not initiated by either Ronco or Plastics, but by a third party. Ronco is no more guilty of "luring" than Plastics was by inviting Ronco employees to Texas on other occasions. Parker went to Illinois for the same reason Ronco employees visited Texas: it suited his purposes. This was a bilateral process of reciprocal visits; placed in this context it is clear no "luring" occurred. Parker freely decided to visit Illinois.

Third, defendants transacted business in Illinois by shipping their products into Illinois in substantial volume. By shipping into Illinois, defendants knew that any defects in their performance would have consequences in Illinois. Shipping items into Illinois in substantial volume therefore suffices to constitute transacting business in Illinois within the meaning of § 17(1)(a), at least where the suit is by the purchaser. *See Mergenthaler Linotype Co. v. Leonard Storch Enterprises, Inc.*, 66 Ill.App.3d 789, 798–99, 23 Ill.Dec. 352, 359–60, 383 N.E.2d 1379, 1386–87 (1978); *Tabor & Co. v. McNall*, 30 Ill.App.3d 593, 333 N.E.2d 562 (1975); *Willis v. West Kentucky Pig Co.*, 132 Ill.App.2d 266, 265 N.E.2d 899 (1971).[8]

When defendants' negotiations in Illinois,[9] invocation of the benefits and protections of Illinois law, and decision to ship goods in substantial volume into Illinois are combined, the conclusion that defendants transacted business in Illinois and are subject to its long-arm statute is irresistable. However, recently it has been suggested that Illinois has restricted the scope of its long-arm statute. It has long been assumed that the Illinois long-arm extended jurisdiction as far as is permitted by the due process clause of the fourteenth amendment to the federal Constitution. *See e.g., Nelson v. Miller*, 11 Ill.2d 378, 389, 143 N.E.2d 673, 679 (1957); Jenner & Tone, *Historical and Practice Notes*, Ill.Ann.Stat. ch. 110, § 17 (Smith-Hurd 1968). However, recently the Illinois Supreme Court indicated that questions under the statute must be resolved as a matter of statutory construction since the statute's reach may not be coextensive with the due process clause.

In *Nelson v. Miller*, this court said that the Illinois long-arm statute reflects a conscious purpose to assert jurisdiction over nonresidents to the extent permitted by the due process clause. We do not, however, regard this observation as the equivalent of declaring that the construction and application of section 17(1)(b) depend entirely upon decisions determining in what circumstances due process requirements would permit long-arm jurisdiction. Neither do we read Nelson to say that in applying section 17(1)(b) we should not construe the meaning and intent of our own statute irrespective of the due process limitations generally applicable to State long-arm statutes. A statute worded in the way ours is should have a fixed meaning without regard to changing concepts of due process, except, of course, that an interpretation which renders the statute unconstitutional should be avoided, if possible. Thus, instead of turning to the array of tests which have been articulated to assist in determining whether long-arm statutes as applied exceed permissible constitutional boundaries, we prefer to resolve this appeal by looking to the meaning of our own statute. *Green v. Advance Ross Electronics Corp.*, 86 Ill.2d 431, 436–37, 56 Ill.Dec. 657, 661–62, 427 N.E.2d 1203, 1207–08 (1981) (citation omitted).

While *Green* involved § 17(1)(b), which asserts jurisdiction over defendants who commit torts in Illinois, its view of the statute was specifically applied to § 17(1)(a) in *Cook Associates, Inc. v. Lexington United Corp.*, 87 Ill.2d 190, 57 Ill.Dec. 730, 429 N.E.2d 847 (1981). *Green* went on to hold

---

**8.** There are some older cases which suggest that the shipping of goods into Illinois alone does not constitute transaction of business within the meaning of the statute. *See e.g., Insull v. New York World-Telegram Corp.*, 273 F.2d 166, 170 (7th Cir. 1959), *cert. denied*, 362 U.S. 942, 80 S.Ct. 807, 4 L.Ed.2d 770 (1960); *Morgan v. Heckle*, 171 F.Supp. 482 (E.D.Ill. 1959); *Grobark v. Addo Machine Co.*, 16 Ill.2d 426, 158 N.E.2d 73 (1959). However, these cases rest on the proposition, explicitly embraced in *Grobark*, that § 17 requires the physical presence of the defendant in Illinois. That

proposition was rejected in *Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill.2d 432, 176 N.E.2d 761 (1961).

**9.** While only Parker was physically present and engaged in negotiations in Illinois, he was apparently doing so as the agent of the other defendants, Plastics, which was his employer, and Dacus, who was Chairman of the Board and hence his superior. Thus, his presence in Illinois not only constitutes the transaction of business on his part, but also on the part of his principals.

that where the actions complained of involved a breach of corporate fiduciary duties which had occurred entirely in Texas, and which depleted an Illinois bank account of the Texas corporation, there was no basis for asserting jurisdiction under the statute. In *Cook Associates*, the court held that where the only contacts with Illinois were that the parties conducted negotiations in Illinois on a matter unrelated to the subject matter of the pending action, the defendant had not transacted business in Illinois within the meaning of the statute. *See* 87 Ill.2d at 198–99, 57 Ill.Dec. 738–39, 429 N.E.2d at 850–51.

Insofar as their view of the reach of § 17 is concerned, we believe that *Green* and *Cook Associates* do not herald a drastic departure from prior Illinois law. To the contrary, we believe that they stand only for the unremarkable proposition that, whether or not § 17 is an attempt to assert jurisdiction to the limits of the due process clause, it is still a statute, and therefore questions under it must be decided, at least as an initial matter, as matters of statutory construction. The Illinois General Assembly, in enacting § 17, did not simply adopt the due process clause, though it could have. *See, e.g.*, Cal.Code Civ.Proc. § 410.10 (West 1973) ("A court of this state may exercise jurisdiction on any basis not inconsistent with the constitution of this state or of the United States."). Instead, it created explicit jurisdictional tests which must be satisfied. *Green* and *Cook Associates* do no more than recognize that, as with any statute, the starting point for construing § 17 must be the "fixed meaning" of the words written into law by the General Assembly. They do not state or imply that the statute's reach is necessarily narrower than the due process clause, or that the court intends

to retreat from the holding of *Nelson v. Miller*. Instead, they merely remind courts that before any constitutional issue is reached, courts must analyze whether jurisdiction is established under any of the statutory tests laid down in § 17.[10]

Turning to the specific holdings of *Green* and *Cook Associates*, we conclude that they cast no doubt on our conclusion that defendants transacted business in Illinois within the meaning of the statute. *Green* merely stands for the proposition where defendants do not voluntarily seek the protections of the forum state's law nor intentionally associate themselves with the forum, and where the only contact with the forum involves an indirect financial relation between the forum and the defendants, the contacts with the forum are too indirect to support jurisdiction. *See* 86 Ill.2d at 439–40, 56 Ill.Dec. at 661–62, 427 N.E.2d at 1207–08. Not only is this holding in no way inconsistent with prior law discussed above, but it in fact appears to be compelled by the due process clause, which prohibits the exercise of jurisdiction on such a tenuous basis. *See, e.g., World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298–99, 100 S.Ct. 559, 567–68, 62 L.Ed.2d 490 (1980); *Stephens v. Northern Indiana Public Service Co.*, 87 Ill.App.3d 961, 966–69, 42 Ill. Dec. 808, 812–13, 409 N.E.2d 423, 427–28 (1980). In this respect, *Green* contains no indication that the court intends to read § 17 more narrowly than the due process clause.

The holding of *Cook Associates* is also limited. The court merely held that negotiations taking place in Illinois which were unrelated to the cause of action were insufficient as a basis for jurisdiction. *See* 87 Ill.2d at 198–99, 57 Ill.Dec. at 738–39, 429 N.E.2d at 850–51. Again, this holding is

---

10. Already, *Green* and *Cook Associates* have provoked a substantial volume of speculation from the members of this court as to whether the Illinois Supreme Court intends to dramatically limit the scope of § 17. *See, e.g., Franchist Architects, Consultants for Franchising, Inc. v. Tuneomize, Inc.*, No. 81 C 6710, slip op. at 3 4 (N.D.Ill. April 21, 1982); *Sponge Cushion, Inc. v. JMG Enterprises, Inc.*, No. 81 C 5594 (N.D.Ill. April 7, 1982); *DuPage Aviation*

*Corp. v. First National Bank & Trust Co.*, No. 81 C 5336, slip op. at 1–2 (N.D.Ill. April 6, 1982); *Adair v. International Resources Corp.*, No. 79 C 4206 (N.D.Ill. Feb. 22, 1982); *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, No. 78 C 3451, slip op. at 16–17 (N.D.Ill. Jan. 22, 1982); *State Security Insurance Co. v. Frank V. Hall & Co.*, 530 F.Supp. 94, 96–97 (N.D.Ill. 1981).

hardly radical. In fact, the due process clause probably prohibits the exercise of jurisdiction based only on one transaction unrelated to the cause of action. *See, e.g., Shaffer v. Heitner*, 433 U.S. 186, 213, 97 S.Ct. 2569, 2584, 53 L.Ed.2d 683 (1977); *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 446–47, 72 S.Ct. 413, 418–19, 96 L.Ed. 485 (1952). If anything, *Cook Associates* supports the exercise of jurisdiction in a case such as this, where the defendant voluntarily comes to Illinois and engages in negotiations related to the contract. As our colleague Judge Moran has noted,

> To construe the long arm statute so narrowly as to limit the jurisdiction of the Illinois courts to situations where the formalities of the contract are executed in Illinois would seem to go beyond even the mandate of the *Green* and *Cook Associates* decisions. In fact, the *Cook* decision implicitly suggests that a non-resident's initiation of business contacts with an out-of-state agent of an Illinois corporation and its subsequent involvement in some activity within the State of Illinois is sufficient to warrant the exercise of jurisdiction over the non-resident, provided the plaintiff's cause of action arises from such conduct. *DuPage Aviation Corp. v. First National Bank & Trust Co.*, No. 81 C 5336, slip op. at 7 (N.D.Ill. April 6, 1982).

Here, defendants entered Illinois and engaged in discussions related to their performance under the contract, and initialed changes in the contract. *Cook Associates* hardly precludes the assertion of jurisdiction.

We conclude that defendants transacted business in Illinois and are subject to jurisdiction under § 17(1)(a). Having resolved the statutory issue, we turn to the question whether Illinois can assert jurisdiction in this case consistent with the dictates of due process.

The limits placed on the assertion of jurisdiction by the due process clause were outlined in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The Court stated that

due process requires only that in order to subject a defendant to a judgment *in personum*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Id.* at 316, 66 S.Ct. at 158 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)).

■ The minimum contacts test of *International Shoe* remains the governing standard in this area. *See Rush v. Savchuk*, 444 U.S. 320, 327, 100 S.Ct. 571, 577, 62 L.Ed.2d 516 (1980). It requires only that the contacts between the defendant, the litigation and the forum be substantial enough so that the defendant should have reasonably anticipated being haled into the courts of the forum state. *See World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Of course, this judgment must be made in light of the relative inconvenience to the defendant which is caused by forcing him to defend in the forum, *see e.g., McGee v. International Life Insurance Co.*, 355 U.S. 220, 223–24, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957); *International Shoe*, 326 U.S. at 317, 66 S.Ct. at 158.

■ In order to find the presence of minimum contacts, "the relevant inquiry is whether defendant engaged in some act or conduct by which he may be said to have invoked the benefits and protections of the law of the forum." *McBreen v. Beech Aircraft Corp.*, 543 F.2d 26, 29 (7th Cir. 1976) (*quoting Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill.2d 432, 440, 176 N.E.2d 761, 765 (1981)). *See Shaffer v. Heitner*, 433 U.S. 186, 215–16, 97 S.Ct. 2569, 2585–86, 53 L.Ed.2d 683 (1977); *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958); *International Shoe*, 326 U.S. at 319, 66 S.Ct. at 159; *Hutter Northern Trust v. Door County Chamber of Commerce*, 403 F.2d 481, 484 (7th Cir. 1968).

■ Here, by selecting the law of Illinois to govern the contract, defendants invoked the benefits and protections of the law of Illinois. Moreover, the fact that it knew it was selling its products to an Illinois corporation makes it reasonable for Plastics to have expected that it would be haled into the courts of Illinois.

When a corporation "purposefully avails itself of the privilege of conducting activities within the forum state," *Hanson v. Denckla*, 357 U.S. at 253 [78 S.Ct. at 1240], it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuting insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State. Hence if the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State. *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297–98, 100 S.Ct. 559, 567–68, 62 L.Ed.2d 490 (1980).

Here, Plastics had clear notice that it was dealing with an Illinois corporation, and the instant suit arises from its efforts to serve a market for its products in Illinois. Thus, there is nothing unfair about expecting it to defend an action brought in Illinois regarding those efforts. Because Plastics contracted with an Illinois corporation, and then intentionally placed its goods in the stream of commerce destined for Illinois, the due process clause permits suit to be brought in Illinois on the contract; by placing its goods in the stream of commerce, defendants have purposely availed themselves of the benefits of doing business in Illinois markets, and it is therefore not unfair to subject them to suit in these markets. *See, e.g., McBreen v. Beech Aircraft Corp.*, 543 F.2d 26 (7th Cir. 1976); *Honeywell, Inc. v. Metz Appartewerke*, 509 F.2d 1137 (7th Cir. 1975); *Connelly v. Uniroyal, Inc.*, 75 Ill.2d 393, 27 Ill.Dec. 343, 389 N.E.2d 155 (1979), *cert. denied*, 444 U.S. 1060, 100 S.Ct. 992, 62 L.Ed.2d 738 (1980); *Hurletron Whittier, Inc. v. Barda*, 82 Ill.App.3d 443, 448, 37 Ill.Dec. 838, 841–42, 402 N.E.2d 840, 843–44 (1980). *See also Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill.2d 432, 176 N.E.2d 761 (1961).

Defendants complain that it would be inconvenient for them to defend in this forum. However, it was not unduly inconvenient for them to come to Illinois when Parker negotiated the instant transaction; it should be no more inconvenient for him and his principals to return now. In any event, as *World-Wide Volkswagen* makes clear, when a defendant has clear notice that he is dealing with a foreign corporation, he has an opportunity to assess his risks and minimize them, if he wishes. Defendants had that opportunity but still decided to service an Illinois market. Now they must pay the price.[11]

Defendants have also moved, in the alternative, to transfer this action to the United States District Court for the Eastern District of Texas, Tyler Division, at Tyler, Texas. Defendants rely on 28 U.S.C. § 1404(a) (1976), which provides, "For the convenience of parties and witnesses, in the inter-

---

11. With respect to defendants Dacus and Parker, their voluntary decisions to act as guarantors in order to enable Plastics to service an Illinois market also constitute the sort of voluntary and purposive decision to involve themselves in an Illinois market which provides a basis for asserting jurisdiction over them consistent with the dictates of due process. *See National Can Corp. v. K Beverage Co.*, 674 F.2d 1134, 1137–38 (6th Cir. 1982). Parker and Dacus cannot complain if, along with the profits they sought by aiding Plastics to serve an Illinois market, they must accept process from the Illinois courts. *Id.*, at 1137.

est of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

There is no dispute that this action might have been brought in the district court for the Eastern District of Texas. The dispute regards whether transfer to that court would be for the convenience of the parties and witnesses and in the interest of justice.

 Section 1404(a) evolved out of the common law doctrine of forum non conveniens which permitted a court with jurisdiction to dismiss a case if brought in an inconvenient forum. *See* Revisor's note, 28 U.S.C. § 1404 (1976). Nevertheless, since § 1404(a) does not involve the draconian sanction of dismissal, the scope of a district court's discretion under it is broader than under the common law doctrine. *Norwood v. Kirkpatrick*, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955). However, plaintiff's choice to bring the action in this court is still entitled to substantial weight under § 1404(a). *See Factors, Etc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978); *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979); *Illinois Tool Works, Inc. v. Sweetheart Plastics, Inc.*, 436 F.2d 1180, 1188 (7th Cir.), *cert. dismissed*, 403 U.S. 942, 91 S.Ct. 2270, 29 L.Ed.2d 722 (1971); *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970); *A. Olinick & Sons v. Dempster Brothers, Inc.*, 365 F.2d 439, 444–45 (2d Cir. 1966); *Bodine's, Inc. v. Sunny-O, Inc.*, 494 F.Supp. 1279, 1285 (N.D.Ill.1980); *Blumenthal v. Management Assistance, Inc.*, 480 F.Supp. 470, 472 (N.D.Ill.1979); *Cunningham v. Cunningham*, 477 F.Supp. 632, 634 (N.D.Ill.1979); *Hess v. Gray*, 85 F.R.D. 15, 23–24 (N.D.Ill.1979).[12] The Supreme Court has enunciated the factors which should be considered when determining whether transfer would be for the convenience of the parties and in the interest of justice. The relevant considerations include both "private interest factors" affecting the convenience of the litigants, and "public interest factors" affecting the convenience of the forum. *Piper Aircraft Co. v. Reyno*, 102 S.Ct. 252, 258 (1981).

The factors pertaining to the private interests of the litigants include[ ] the "relative ease of access to sources of proof, availability of compulsory process for attendance of the unwilling, and the cost of obtaining willing witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious, and inexpensive." The public factors bearing on the question include[ ] the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflicts of law, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. *Id.* at 258 n. 6 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1957)).[13]

 At the present time, defendants have not made an adequate showing to justify transfer. It does not appear that this district is an unduly inconvenient forum. At least some of the evidence relevant to this case is located here, and it would inconvenience Ronco to transport it to Texas. Affidavit of Earl Rosenstein ¶¶ 13–15. Since defendants have retained

---

**12.** Moreover, plaintiff's choice of forum is entitled to additional deference where, as here, he chooses his home state as the forum. *Piper Aircraft v. Reyno*, —— U.S. ——, 102 S.Ct. 252, 265·66, 70 L.Ed.2d 419 (1981); *Koster v. (American) Lumberman's Mutual Cas. Co.*, 330 U.S. 518, 524, 67 S.Ct. 828, 831, 91 L.Ed. 1067 (1947).

**13.** *Piper Aircraft* and *Gilbert* were both forum non conveniens cases. However, the Court has stated that while the discretion to be exercised under § 1404 is broader than under forum non conveniens, the factors to be considered are the same. *See Norwood v. Kirkpatrick*, 349 U.S. 29, 30, 75 S.Ct. 544, 545, 99 L.Ed. 789 (1955). *See generally* 1 J. Moore, J. Lucas, H. Fink, D. Weckstein & J. Wicker, Moore's Federal Practice ¶ 0.145[5] (1982); 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure §§ 3847–54 (1976).

Chicago counsel, counsel need not incur travel expenses, and presumably this litigation will cost defendants no more than if it were pending in Texas and defendants were forced to retain counsel there. Discovery had from defendants should not inconvenience them unduly, since we would anticipate that much if not all of this discovery will be taken in Texas. *See, e.g.,* Fed.R. Civ.P. 45(d). Transferring this case to Texas will only require plaintiffs to retain Texas counsel and communicate with their out-of-state counsel, thereby simply shifting the inconvenience. Transfer is not appropriate when it merely would shift inconvenience from plaintiffs to defendants. *See* 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3848 at 246 n. 20 (1976 & Supp. 1982) (citing cases). As to the public interest factors, Illinois is clearly an interested forum state. Its law applies to this action, and the dispute involves economic injury to a citizen of Illinois, Ronco. Moreover, there has been no showing that docket congestion in the proposed transferee court is any better than it is in this court. We do not rule out the possibility that, after discovery in this case is complete and final pretrial materials have been filed, it will become clear that this dispute centers around evidence located and events occurring in Texas, and that the Northern District of Illinois is clearly an inconvenient forum. However, on the relatively barren record currently before the court, we cannot say that transfer is appropriate.

Defendants' motion to dismiss for lack of personal jurisdiction is denied. Defendants' motion to transfer this case to the United States District Court for the Eastern District of Texas, Tyler Division is denied without prejudice to its renewal at a later date. Defendants are ordered to answer the complaint within 14 days. On the court's motion, counts III and IV of the complaint are dismissed for the reasons stated at n. 4 & 5, *supra.*